66 P.3d 606 (2003)
149 Wash.2d 82
In the Matter of the Personal Restraint of John TORTORELLI, Petitioner.
No. 71251-4.
Supreme Court of Washington, En Banc.
Argued May 9, 2002.
Decided April 10, 2003.
*607 James Lobsenz, Seattle, for Petitioner.
Norm Maleng, King County Prosecutor, Lynn Prunhuber, Deputy, Seattle, for Respondent.
Christine Gregoire, Attorney General, Alexandra Smith, Asst., Olympia, Amicus Curiae on Behalf of Department of Natural Resources.
CHAMBERS, J.
John Tortorelli was found guilty of theft, trafficking in stolen property, and criminal profiteering, arising from his business of salvaging stray logs and submerged trees from Lake Washington. Tortorelli made several challenges to his convictions in his direct appeal, which were rejected by the Court of Appeals. In this personal restraint petition he raises numerous additional challenges, including insufficiency of the evidence that the logs and trees were "the property of another," as required by the statute under which he was charged, RCW 9A.56.020(1)(a), and ineffective assistance of counsel. We conclude as a matter of law that the State owned the salvaged logs and trees, and we reject his other claims.

FACTS
Until 1994, the Department of Natural Resources (DNR) issued log patrol licenses to *608 authorize salvage of stray logs in return for a percentage of the profit. See former RCW 76.40.030, .050 (1984), repealed by Laws of 1994, ch. 163, § 6. This former log patrol statute provided that if the salvaged logs were branded, they were to be returned to the owner and the salvage operator would be allowed to keep 75 percent of their value. Former RCW 76.40.050(2). If, however, the logs were unbranded, the State asserted ownership, and in practice allowed the operator to keep 90 percent of the value. The licensee was required to inform DNR of the general location of the salvage operation and the specific location of the log storage in order to facilitate inspection.
The stray logs authorized for salvage by a log patrol licensee are not the same as the ancient forest remnants also found in Lake Washington. The ancient forest remnants were not lost from transportation or storage, but resulted from several landslides that occurred around the shores of Lake Washington about 1,100 years ago. These ancient trees have been preserved by the low oxygen content in the deep water. Because of their historic and scientific value, the trees by definition were not salvageable under the former log patrol statute.
In February 1991, Tortorelli, the owner of Western Wood Lumber, purchased salvage equipment including a barge and tug called the Shawnee from Carl Burgin and Roy Jamieson of Clearwater Marine Works, Inc. (Clearwater). Clearwater retained a barge and tug named the Crawfish. The agreement between Tortorelli and Clearwater was memorialized in two different documents. A security agreement provided in part that Western Wood Lumber could use permits issued to Clearwater if permitted by law. A cooperation agreement provided, among other things, that the two businesses would not directly compete with each other in the log salvage business.
On April 15, 1991, shortly after Tortorelli had his equipment towed from Everett to commence a salvage operation in Lake Washington, the State mailed him a letter advising that the State owned all the unbranded logs in the lake, describing the regulations applicable to log salvage, and summarizing chapter 79.90 RCW, the aquatic lands act. The letter included a copy of the log patrol statute, former chapter 76.40 RCW, and the log patrol operating guidelines. In his application, Tortorelli indicated that his operation and log storage would be in Everett. The State therefore advised him of log patrol restrictions in and around the Everett harbor.
In August 1991, in apparent response to the April 15 letter, Tortorelli applied for a log patrol permit. However, he did so under the name Clearwater Marine Works and not Western Wood Lumber. He was neither an officer nor an employee of Clearwater. By applying in the name of Clearwater, he avoided the necessity of posting the $10,000 bond required of new applicants, and had to pay only the $500 required to license an additional boat. See former RCW 76.40.030(1).
Believing that both the Crawfish and the Shawnee were still owned by Clearwater, DNR issued a new license to attach to the Shawnee. When issuing the log patrol permit, the State sent Tortorelli another letter, reiterating which logs the State owned and enclosing revised operating guidelines.
While awaiting his new license, Tortorelli moved his operation to the ancient submerged forest on the southwest side of Mercer Island. Charts issued by the National Oceanic and Atmospheric Administration indicate that the forest extends to within 30 feet of the surface of the water. Some trees are anchored in the bed of the lake, but others were uprooted in about 1919 when the Corps of Engineers cleared the channel during construction of the Lake Washington ship canal. The timber the crew found at this site consisted of full length fir trees, about a hundred feet tall, with root balls attached. The crew raised the trees, then cut off the root balls and tops and returned them to the water, retaining only the tree trunks.
In August 1991, while Tortorelli was working in the submerged forest area, he began to cooperate with Dr. Gordon Jacoby and Dr. Patrick Williams, scientists doing a tree ring analysis to date the sunken trees. Tortorelli provided slices from 18 different trees, each *609 of which was found to be at least a thousand years old. In return, the scientists helped locate fallen trees by attaching buoys. Dr. Williams testified at trial that Tortorelli's crane would not be strong enough to lift a tree that was still rooted in the bed of the lake. However, the trees raised by Tortorelli, while not rooted, had been partially buried in the mud, as evidenced by preservation of the outer ring. The trees were still encased in mud when raised from the bed of the lake, and had to be dunked back in the water several times to remove mud.
In March 1992, after spending a few months in Everett, Tortorelli returned to Lake Washington, where he went to work in the Gene L. Coulon Memorial Beach Park area. Toward the end of the month, a metro sewer line was ruptured under the channel between Mercer Island and the eastern shore of Lake Washington, triggering extra scrutiny from DNR. On becoming aware of Tortorelli's operations in the area, DNR informed him that he needed to obtain a hydraulics project approval. Tortorelli accordingly applied, but carried on his operations without waiting to receive the permit.
On May 7, 1992, the Department of Fisheries issued a hydraulics project approval on condition that Tortorelli conduct a study to determine whether his operation was damaging crayfish, an important food source for bass and trout and a crucial part of the lake's ecology. Tortorelli was also required to stay south of the Interstate 90 Bridge. The same month Fisheries cited Tortorelli twice for operating outside the conditions of his hydraulics project approval permit. Both citations were dismissed.
In June 1992, Steve Meacham of DNR and Tortorelli had an "extended discussion about where and when it was legal to collect stray logs," during which Meacham read Tortorelli large portions of the log patrol statute. Report of Proceedings (RP) (p.m. Jan. 31, 1995) at 26-28.
Four months later, the fisheries department executed a search warrant on Tortorelli's home and log patrol area, and seized records. The State determined that he had illegally seized trees worth $165,000.
Tortorelli was arrested in August 1994. He was charged with several offenses, which were consolidated into eight counts for trial: count 1, profiteering; counts 2 and 3, theft of and trafficking in submerged trees; counts 5, 6, 8, and 9, theft of and trafficking in stray logs; and count 4, offering a false document for filing.[1]
At trial, Tortorelli did not contest nor concede the State's ownership of all the trees. In fact, Tortorelli had conceded the State's ownership of the logs and trees to a log patrol administrator prior to trial. Instead, he claimed a good faith belief that he had permission to salvage logs under Clearwater's license. The State countered, over Tortorelli's objection, with witness testimony that transfers of log patrol licenses are not legally permissible, a topic on which the statute itself is silent. Tortorelli did not take the stand on his own behalf. At the request of the defense, the trial court gave the entire log patrol statute to the jury as an exhibit, rejecting the State's request for a jury instruction on the statute.
Tortorelli was convicted of all counts. He was sentenced to 8 concurrent terms ranging from 12 to 43 months and ordered to pay restitution.

ANALYSIS
To prevail on his personal restraint petition, Tortorelli has the burden of establishing either error of constitutional magnitude resulting in actual prejudice or nonconstitutional error resulting in a complete miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990).
Tortorelli was charged under a statute that requires the jury to find he was stealing "the property of another." RCW 9A.56.020(1)(a). He was not charged under subsection (c), which covers misappropriation of lost property. Thus, one of the elements the State must prove is that the logs and trees belonged to someone other than Tortorelli. At trial, Tortorelli did not contest that the State owned the logs and trees. However, in this personal *610 restraint petition, Tortorelli argues for the first time that the State did not own the logs or, relatedly, that there is insufficient evidence of state ownership of the logs. We find both arguments unavailing.
First, we find as a matter of law, the State of Washington does own both the ancient forest and unbranded stray logs. Our constitution vests ownership of the "beds and shores of all navigable waters in the state" to the State. Const. art. XVII, § 1. While no Washington court has had occasion to rule on the ownership of logs or trees that have been a part of that lake bed for centuries, generally, the State has title to valuable assets within the beds of navigable waters, with exceptions not relevant here. See ch. 79.95 RCW; see also Eisenbach v. Hatfield, 2 Wash. 236, 240-41, 26 P. 539 (1891) (noting that the State as the successor to the king is the absolute owner of navigable waters and the soil under them).
Further support of State ownership appears in federal law. When the United States was constituted, the Constitution reserved to the original states the shores and beds of navigable waters within their respective boundaries. Martin v. Waddell, 41 U.S. (16 Pet.) 367, 10 L.Ed. 997 (1842). Under the equal footing doctrine, states subsequently admitted to the Union obtained "the same rights, sovereignty and jurisdiction ... as the original States possess within their respective borders." Mumford v. Wardwell, 73 U.S. (6 Wall.) 423, 436, 18 L.Ed. 756 (1867). More recently, the Submerged Lands Act of 1953 confirmed that the states took title to natural resources found within navigable waters:
It is determined and declared to be in the public interest that ... title to and ownership of the lands beneath navigable waters within the boundaries of the respective States, and the natural resources within such lands and waters, ... [is] vested in and assigned to the respective States ... in which the land is located....
43 U.S.C. § 1311(a).
Tortorelli disputes whether the trees and logs were natural resources. "Natural resources" is defined in the Submerged Lands Act as "without limiting the generality thereof, oil, gas, and all other minerals, and fish, shrimp, oysters, clams, crabs, lobsters, sponges, kelp, and other marine animal and plant life." 43 U.S.C. § 1301(e) (emphasis added). When a statute fails to fully define a term, we refer to dictionary definitions. W. Telepage, Inc. v. City of Tacoma, 140 Wash.2d 599, 609, 998 P.2d 884 (2000). Webster's dictionary defines "natural resources" as "materials ... supplied by nature." Webster's Third New International Dictionary 1507 (1993). Trees are "supplied by nature." The legislature has recognized that timber is one of the most valuable natural resources in the state. See, e.g., RCW 76.13.005(4), .010(5). Thus, we have no difficulty in determining as a matter of law that trees are natural resources. The word "marine" is defined as "of or relating to the commerce of the sea." Webster's at 1382. Because the Submerged Lands Act refers to all navigable waters in the United States, "marine" in this context encompasses navigable waters other than seas. We find no legal or logical reason to exclude the submerged trees from the definition of "natural resources" which also includes oil and gas which, like the trees, are resources as a result of ancient natural disasters and other natural occurrences.
The ancient forest trees are located "within" the waters or soil of Lake Washington. Under state and federal statutory and common law, the State owns the submerged trees. It is well established that "[u]nambiguous language does not require nor permit judicial construction." State v. Michaelson, 124 Wash.2d 364, 366, 878 P.2d 1206 (1994).
Once the trees have been cut into logs, it is not so clear that they are natural resources as meant by the statute because cut logs are not "supplied by nature." However, there is a separate basis for state ownership of stray logs, the marks and brands statute, which provides: "Unbranded or unmarked stray logs or forest products become the property of the state when recovered." RCW 76.36.020. Therefore, as a matter of law the State also owned the stray logs left by the Corps of Engineers in about 1919.
*611 Tortorelli argues for the first time that under the "law of finds," the State had no title to the logs and trees. The law of finds is a common law principle granting title to the first party to discover and reduce to possession unknown or abandoned artifacts found in the sea. Commonwealth v. Maritime Underwater Surveys, Inc., 403 Mass. 501, 531 N.E.2d 549 (1988). When the ancient trees slid from Mercer Island into Lake Washington 1,100 years ago, the State of Washington did not exist. Native American tribes do not claim ownership over the trees. Thus, Tortorelli argues that the trees are unowned and under the law of finds he is entitled to salvage them. However, we find the law of finds must give way to our state and federal constitutions and laws, and we decline to apply it to these logs.
Because the submerged trees and stray logs belong to the State as a matter of law, Tortorelli cannot prove any actual and substantial prejudice, and we accordingly deny relief on these grounds.
In a similar vein, Tortorelli argues that the evidence was insufficient to convict because the State was allegedly relieved of its burden to prove an element of the crime, that the logs were owned by another. Sufficiency of the evidence is a question of constitutional magnitude because due process requires the State to prove its case beyond a reasonable doubt. State v. Baeza, 100 Wash.2d 487, 488, 670 P.2d 646 (1983) (citing Jackson v. Virginia, 443 U.S. 307, 316, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 361, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)). Evidence is sufficient to convict when "`viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Green, 94 Wash.2d 216, 221, 616 P.2d 628 (1980) (quoting Jackson, 443 U.S. at 319, 99 S.Ct. 2781). We find Tortorelli has not met his burden for collateral relief.
First, we note that the jury was instructed to decide whether the prosecution had proved, beyond a reasonable doubt, that Tortorelli had taken the property of another. It did so find. Second, there was a wealth of evidence on the record from which the jury could so find. Tortorelli has shown no prejudice, and accordingly, we reject this claim.
Next, Tortorelli argues that there was insufficient evidence to determine that he operated under an invalid log patrol license. He claims that in 1991 he was authorized to operate under the Clearwater license. He bases this claim on a contract document that states that he was entitled to use the Clearwater permits, if legal. However, the license in question was for the Crawfish, which Clearwater retained. Licenses are specific to the vessel operated. As a result, Clearwater's license for the Crawfish could not provide Tortorelli authorization to salvage logs while operating the Shawnee. In 1992, Tortorelli operated under a new license, but when he applied for the license in the name of Clearwater, he was neither an owner nor an employee of Clearwater. He was found guilty of falsifying a document in his license application. These facts are sufficient to establish that the license Tortorelli was using in 1992 was invalid. Therefore, Tortorelli has failed to establish a constitutional error.
Tortorelli also argues that the trial court should not have admitted a copy of the log patrol statute into evidence because it contains a presumption that anyone holding stray logs without a valid license did so "with intent to deprive and defraud the owner thereof." Former RCW 76.40.080 (1984). He argues that an irrebuttable presumption of one of the elements of theft violates due process. However, this contention is not properly before us because the State initially offered excerpts from the statute, and it is Tortorelli himself who wanted the entire statute admitted, including the portion of which he now complains. The invited error doctrine prohibits a party from setting up an error in the trial court then complaining of it on appeal. See, e.g., State v. Henderson, 114 Wash.2d 867, 870, 792 P.2d 514 (1990); State v. Neher, 112 Wash.2d 347, 352-53, 771 P.2d 330 (1989). Tortorelli failed to offer any limiting or curative instruction with respect to admitting the statute as an exhibit. Therefore, the invited error rule applies, and Tortorelli may not now complain on collateral attack that the trial court acceded to his *612 request to admit the statute or that his due process rights were violated by the presumption contained in the statute. See State v. Studd, 137 Wash.2d 533, 552, 973 P.2d 1049, 1058 (1999).
Tortorelli further argues that the trial court erred in failing to declare the law, leaving the jury to determine whether a log patrol license is transferable based on its interpretation of the log patrol statute and on opinion testimony from DNR that such transfers are illegal. The court has a duty to declare the law. Const. art. IV, § 16; Pepperall v. City Park Transit Co., 15 Wash. 176, 183, 45 P. 743 (1896), 46 P. 407 (1896), overruled on other grounds by Thornton v. Dow, 60 Wash. 622, 111 P. 899 (1910). At trial, Tortorelli objected to Meacham's testimony that log patrol licenses could not be transferred and to the State's proposed jury instruction on transferability of log patrol licenses. The court noted the objection for the record and referred to a pretrial ruling that the witness may indicate whether or not a transfer was permissible.
Tortorelli's objection to Meacham's testimony at trial did not preserve the gravamen of his current argument for collateral review. Tortorelli must now show us that the trial court's alleged failure to declare the law was either constitutional error causing actual and substantial prejudice, or nonconstitutional error leading to a fundamental defect that inherently resulted in a complete miscarriage of justice. See In re Pers. Restraint of Cook, 114 Wash.2d at 810-11, 792 P.2d 506.
Assuming a constitutional error, Tortorelli has failed to prove actual and substantial prejudice. Assuming Clearwater's license was transferable, the license for the Crawfish did not provide Tortorelli authority to salvage stray logs while operating the Shawnee. Moreover, the legal question of whether the license was transferable is irrelevant to the factual issue of whether Tortorelli was acting under a good faith belief that he was authorized to salvage the submerged trees and stray logs. Consequently, Tortorelli has failed to prove actual and substantial prejudice.
Tortorelli finally argues that failure to object to admission of the log patrol statute constitutes ineffective assistance of counsel. In order to establish ineffective assistance of counsel, the petitioner must show that counsel's performance was deficient and not a matter of trial strategy or tactics, and that the petitioner was prejudiced. State v. Hendrickson, 129 Wash.2d 61, 77-78, 917 P.2d 563 (1996) (citing Strickland v. Washington, 466 U.S. 668, 688-89, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Washington courts indulge in a strong presumption that counsel's performance was reasonable. State v. Garrett, 124 Wash.2d 504, 518-19, 881 P.2d 185 (1994). Here, counsel allowed the admission of the entire log patrol statute in preference to excerpts from the statute, which the State wanted to admit. Admitting the entire statute enabled Tortorelli to argue his claim that he took the timber with good faith claim of title because there was "nothing in the log patrol guidelines that says a corporation cannot do exactly what Clearwater did, which is to authorize somebody to use their license." Report of Proceedings (Feb. 10, 1995) at 126. We find this to be a legitimate trial strategy and cannot be a basis for ineffective assistance of counsel. State v. Brett, 126 Wash.2d 136, 198-99, 892 P.2d 29 (1995).
The only conviction not based on the premise that the State of Washington owns the timber salvaged by Tortorelli is count 4. This is the charge of offering false documents for filing, based on Tortorelli's false representation of himself as an agent of Clearwater when applying for a new log patrol permit. The statute provides:
Every person who shall knowingly procure or offer any false or forged instrument to be filed, registered, or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in such office under any law of this state or of the United States, shall be punished by imprisonment in a state correctional facility for not more than five years, or by a fine of not more than five thousand dollars, or by both.
RCW 40.16.030. Tortorelli argues that even though materiality is not mentioned in the statute, materiality is an element of the crime. For this proposition he cites to State *613 v. Price, 94 Wash.2d 810, 620 P.2d 994 (1980). However, the issue in Price was not materiality but whether the document in question was an "instrument." Id. Thus, Tortorelli's citation to Price is not well taken. Even if materiality is required, the jury instructions as a whole required the false representation to be related "to a material fact represented in the document." State's Resp. to Pers. Restraint Pet., App. Q, Instruction 26. Tortorelli's implied representation that he was an agent of Clearwater was material.
We hold that the State of Washington had title to both the submerged trees and the stray logs. If admission of the log patrol statute was erroneous, the error was invited, and Tortorelli waived his right to object. The failure to object did not constitute ineffective assistance of counsel as it was based on legitimate trial strategy. We therefore affirm the trial court on all counts.
JOHNSON, MADSEN, IRELAND, BRIDGE, and OWENS, JJ., and SMITH, J. Pro Tem., concur.
SANDERS, J., dissenting.
As the majority notes, counts one, two, three, five, six, eight, and nine are all predicated on the State's asserted ownership of the submerged trees and the stray logs.[1] Majority at 612. Tortorelli contends the State submitted insufficient evidence to prove it owns the submerged trees Tortorelli allegedly stole from the state.
The common law supplements the criminal statutes "insofar as [it is] not inconsistent with the Constitution and statutes of this state...." RCW 9A.04.060. Tortorelli raises the common law doctrine of finds. Under this doctrine, "the finder of things that have never been appropriated, or that have been abandoned by a former occupant, may take them into his possession as his own property; and the finder of any thing casually lost is its rightful occupant against all but the real owner." Eads v. Brazelton, 22 Ark. 499, 501 (1861). Because the ancient submerged trees fell into Lake Washington prior to the existence of the state and federal governments and none of the previous inhabitants lay claim to the trees, Tortorelli asserts ownership of the submerged trees under the law of finds. Pet. for Review at 14. Without reaching the merits of Tortorelli's common law claim, the majority concludes as a matter of law that the State owns the submerged trees. Majority at 609.
The majority reaches this astonishing conclusion by overstating the State's claim to natural resources under the federal Submerged Lands Act of 1953, 43 U.S.C. § 1301. Majority at 610. As the majority notes, the act provides a nonexclusive definition of "natural resources." Majority at 610. However, its illustrative examples, "oil, gas, and all other minerals, and fish, shrimp, oysters, clams, crabs, lobsters, sponges, kelp, and other marine animal and plant life," 43 U.S.C. § 1301(e), are all resources that grow or evolve naturally below water, rather than resources that once grew on dry land and then happened to end up beneath the surface by accident or natural disaster.
The majority's conclusion is counterintuitive. The Submerged Lands Act speaks of minerals and marine life, not of sunken trees. Moreover, the rule of lenity requires the court to construe an ambiguous statute in a criminal case favorably to the accused. In re Post Sentencing Review of Charles, 135 Wash.2d 239, 249-50, 955 P.2d 798 (1998). This assures adequate notice, and thus due process, concerning what conduct will be considered illegal. Liparota v. United States, 471 U.S. 419, 427, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985). Today's majority gives short shrift to this vital concern.
I therefore respectfully dissent.
ALEXANDER, C.J., concurs.
NOTES
[1] Count 7 was dropped.
[1] Tortorelli was originally charged with nine violations. Majority at 613. Count seven was dropped; the issue of title has no bearing on count four, offering a false document for filing. Id. at 609, 612.