IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Personal Restraint Petition of: | ) ) ) | No. 29118-9-III |
| ALEJANDRO ANTONIO GUZMAN, | ) ) | |
| Petitioner. | ) ) | UNPUBLISHED OPINION |

SIDDOWAY, J. — Alejandro Antonio Guzman petitions for relief from personal restraint imposed for his 2006 convictions of two counts of second degree rape and two counts of practicing a profession (massage therapist) without a license. This is his first personal restraint petition following this court's 2008 opinion affirming his convictions and is timely.

He raises five grounds for relief, none of which have merit. The petition is therefore dismissed.

FACTS AND PROCEDURAL BACKGROUND

The evidence presented in Mr. Guzman's trial is set forth in this court's opinion affirming the convictions. *State v. Guzman*, noted at 146 Wn. App. 1035, 2008 WL 3523940 (2008). Mr. Guzman was convicted of two counts of second degree rape that occurred when, while holding himself out as a massage therapist at a spa and providing

massage services to female customers, he placed his finger or fingers in the vagina of a customer on two separate occasions. An investigation of the women's allegations led to the discovery that he was unlicensed and thus his conviction of the two licensing crimes.

In his appeal of right, Mr. Guzman assigned error to the (1) trial court's refusal to sever the counts concerning the two victims, (2) the court's exclusion of the opinion of one investigating detective that one victim's allegations were "unfounded," (3) the court's allowing the two victims' boyfriends (Justin Mallonee and Eric Walls) to testify to statements by the victims, (4) a due process violation based on the poor quality of the transcribed report of proceedings, and (5) a violation of his right to a public trial through what he contends was a closure of the courtroom during the individual questioning of some prospective jurors. This court found only one evidentiary error and concluded it was harmless.

Mr. Guzman now contends in his personal restraint petition that (1) the trial court denied his right to a public trial, (2) there was insufficient evidence to support the second degree rape convictions, (3) he received ineffective assistance of counsel, (4) the trial court erred in admitting hearsay, and (5) the prosecutor committed misconduct during closing argument by commenting on Mr. Guzman's credibility.[1]

---

[1] Mr. Guzman raised cumulative error as a sixth ground for relief, but given our disposition of the other grounds there is no need to address cumulative error.

2

We initially stayed Mr. Guzman's petition pending the decision and mandate by the Washington Supreme Court in *State v. Wise*, 176 Wn.2d 1, 288 P.3d 1113 (2012) and *In re Personal Restraint of Morris*, 176 Wn.2d 157, 288 P.3d 1140 (2012). When the stay was lifted, the petition was referred to a panel of judges based on a determination by the chief judge that at least one of the claims—the claim that Mr. Guzman's right to public trial was violated—was not frivolous.

## ANALYSIS

When considering a timely personal restraint petition, we may grant relief only if the petitioner is under an unlawful restraint, as defined by RAP 16.4(c). RAP 16.4(a). Additionally, the availability of collateral relief is limited by court rule and Washington decisions in two ways, recently summarized in *In re Personal Restraint of Yates*, 177 Wn.2d 1, 17, 296 P.3d 872 (2013):

> First, "[t]he petitioner in a personal restraint petition is prohibited from renewing an issue that was raised and rejected on direct appeal unless the interests of justice require relitigation of that issue." [*In re Pers. Restraint of Davis*, 152 Wn.2d 647, 671, 101 P.3d 1 (2004) (*Davis* I)] (footnotes omitted). The interests of justice are served by reconsidering a ground for relief if there has been "an intervening change in the law 'or some other justification for having failed to raise a crucial point or argument in the prior application.'" *In re Pers. Restraint of Stenson*, 142 Wn.2d 710, 720, 16 P.3d 1 (2001) (internal quotation marks omitted) (quoting *In re Pers. Restraint of Gentry*, 137 Wn.2d 378, 388, 972 P.2d 1250 (1999) (*Gentry* II)). A petitioner may not avoid this requirement "merely by supporting a previous ground for relief with different factual allegations or with different legal arguments." *Davis* I, 152 Wn.2d at 671. Second, new issues must meet a heightened showing before a court will grant relief. For alleged constitutional errors, "[a] petitioner has the burden of showing actual

3

prejudice . . . ; for alleged nonconstitutional error, he must show a fundamental defect resulting in a complete miscarriage of justice." *In re Pers. Restraint of Elmore*, 162 Wn.2d 236, 251, 172 P.3d 335 (2007) (*Elmore* II). The petitioner must make these heightened showings by a preponderance of the evidence. *See Davis* I, 152 Wn.2d at 671-72.

(Some alterations in original.)

Dismissal is necessary where a petitioner fails to make a prima facie showing of actual prejudice for alleged constitutional errors; or, for alleged nonconstitutional errors, fails to show a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813-14, 792 P.2d 506 (1990).

Two of the grounds for relief raised by Mr. Guzman's petition—the public trial issue and his objection to the hearsay offered by Mr. Mallonee and Mr. Walls—renew issues that were raised and rejected on direct appeal. We first address those issues subject to the standard that the interests of justice require relitigation. We then turn to his remaining grounds for relief.

## I. Public Trial

Article I, section 22 of the Washington Constitution guarantees a criminal defendant the right to "a speedy public trial by an impartial jury," among other rights. In the three years since we affirmed Mr. Guzman's conviction, "[t]he meaning of the 'public trial' right has been heavily litigated." *State v. Love,* 176 Wn. App. 911, 916, 309 P.3d 1209, *petition for review filed*, No. 89619-4 (Wash. Dec. 9, 2013). The interests of justice are served by reconsidering a ground for relief if there has been an intervening

4

change in the law. *Stenson*, 142 Wn.2d at 720. We review Mr. Guzman's contention that

his public trial right was violated anew because of the possibility that intervening cases

would call for a different conclusion than was reached in 2008.

The facts have not changed, so we rely on this court's 2008 opinion, which

described the jury selection procedure as determined from the verbatim report of

proceedings (RP):

> On the afternoon of the first day of jury selection, August 21, 2006, the trial court asked the jurors to fill out a questionnaire. The judge informed the prospective jurors: "Now, there are going to be some of you perhaps and we won't know this until the questionnaires are filled out that may be requesting private interviews or we may want to talk to you privately outside the presence of the other jurors." RP (Aug. 21, 2006) at 40-41.
> On August 22, the trial court proceeded with the jury selection. The trial court advised those present that they were on the record and that they were continuing to address the jury questionnaire comments. The following statement was made by the trial court:
> THE COURT: The following folks specifically requested a private interview, heard of the case, or indicated again on the hardship question that there may be some ongoing issues for them. I'm going to suggest that we interview those people individually. That would leave us with 47 and 71 being excused, 21 people for this morning. And I'm going to give those numbers: 6, 23, 24, 31, 32, 35, 38, 39, 42, 44, 45, 49, 61, 64, 65, 69, 70, 76, 81, 86, and 89. I'm going to suggest that the other jurors we release until 1:30, and we will hold the 21 and see how far we get this morning.
> Everybody leave with that?
> RP (Aug. 22, 2006) at 1-2. The bailiff was instructed to line up those waiting to be interviewed on the benches outside of the courtroom. Defense counsel then asked the trial court where they would be conducting the interviews. The judge responded as follows:

5

> THE COURT: We're going to put them right here in the jury box with the microphone and basically, I will do essentially the questioning as to whatever their concerns were first.
>
> MR. ADAME: Okay.
>
> THE COURT: Then I ask counsel if they have any further questions at that point, and that's how we do it.
>
> RP (Aug. 22, 2006) at 2. At that point, the other jurors were excused until the afternoon.
>
> After having the first prospective juror 6, brought into the courtroom to address the concerns the juror had stated in the questionnaire, the trial judge seated the juror in the jury box in the seat closest to her, and he was provided a handheld microphone. The trial court advised juror 6 that he was going to be questioned there in the courtroom because "this is our definition of private, out of the presence of the other jurors." RP (Aug. 22, 2006) at 4. The judge further stated that "[e]veryone else who is present in the courtroom we have to have here" but assured him that his request for privacy would be respected by those in the courtroom. RP (Aug. 22, 2006) at 4. The record indicates that the State and Mr. Guzman were present. The trial court proceeded to interview the remaining jurors who had requested private interviews in this manner.
>
> The trial court also individually questioned other jurors who had indicated that they had heard of the case before or that a trial would impose a potential hardship on them. Specifically, the court explained to juror 31, who had answered on her questionnaire that she had heard of the case, that she was being questioned privately because "I tend to want to do that out of the presence of the other jurors, because we're never entirely sure of what information will be brought out." RP (Aug. 22, 2006) at 15.

2008 WL 3523940, at *10-11 (alteration in original). From this record, this court concluded in its 2008 opinion that "there is no indication . . . that the court closed the courtroom to the public. Accordingly, there is no violation of Mr. Guzman's right to public trial." *Id.* at *11.

6

Mr. Guzman's petition presents argument from intervening case law and new affidavits or declarations from Tammy Madewell (fka Wyrik), a court reporter who was present for the jury selection; Carie Stryka, a media design consultant who reviewed the video recording of the proceedings; and former prospective juror Lori Jordan Isley, who happens to be a licensed attorney.

Ms. Madewell reviewed the JAVS System[2] disc recordings for the day in question and was present in court. The recordings and a log of the recordings were provided with her affidavit. She testifies that the "JAVS disc recordings demonstrate that there were private interviews of prospective jurors" followed by peremptory challenges. Personal Restraint Petition (PRP), App. A. But labeling the interviews as "private" admits of several possible meanings. Ms. Madewell's affidavit and its attachments include nothing that suggests that the trial judge excluded anyone other than other prospective jurors from the courtroom. If anything, the log of the recordings includes entries tending to confirm that only other jurors were excluded. *See id.* (entries on the log attached to the affidavit include "J-Due to Jury Questionnaire excusing Jurors," "J-Keep the 21jurors [sic] and excuse the rest," and, following the individual juror interviews, "Called for prospective jurors," "Waiting for Prospective jurors," and "The prospective jurors were seated in the

---

[2] "JAVS" is an acronym for and registered trademark of Jefferson Audio Video Systems Inc., a provider of courtroom audio visual systems, according to the company's website, http://javs.com (last visited Jan. 28, 2014).

courtroom"). The log includes no reference to the judge ever "closing" or "reopening" the courtroom or to its ever excusing "the public."

Carie Stryka was retained to review the videotape of the jury selection proceedings and, according to her affidavit, "my task was to watch the individual private interviews of the prospective jurors and determine if 'members of the public' were present or excluded during the interviews of the jurors who were selected for private interviews." PRP, App. B. In addition to seeing the judge, the lawyers, the defendant, and the jurors being questioned individually, Ms. Stryka saw both a police officer and a court consultant present in the courtroom during interviews of individual jurors but testified that she "[did] not know if being a policewoman means 'public' or if . . . a court consultant is considered a member of the 'public.'" *Id.* Her affidavit does not state that she observed anyone being denied entry to the courtroom, anyone asked to leave the courtroom, or any statements by the judge "closing" the courtroom.

As to Ms. Isley's declaration, it states, relevant to our issue, only that "I was selected for individual *voir dire*. My recollection is that other jurors were not present in the courtroom. Superior Court Judge Reukauf was present as was counsel for the Defendant and the Prosecuting Attorney. I believe the Defendant was also present." PRP, App. C. Again, this is evidence only that there were individual juror interviews at which the remaining jurors were not present, which was the court's definition of "private."

8

A defendant's right to a public trial extends to the voir dire of prospective jurors. *Presley v. Georgia*, 558 U.S. 209, 213-14, 130 S. Ct. 721, 175 L. Ed. 2d 675 (2010); *State v. Strode*, 167 Wn.2d 222, 226-27, 217 P.3d 310 (2009) (quoting *In re Pers. Restraint of Orange*, 152 Wn.2d 795, 804, 100 P.3d 291 (2004)). While a trial court may close the courtroom to the public to protect a compelling interest, it may do so only if it first considers the five factors identified in *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995) and enters its specific findings on those factors on the record. *State v. Easterling*, 157 Wn.2d 167, 175, 137 P.3d 825 (2006).[3] Whether the right to a public trial has been violated is a question of law reviewed de novo. *State v. Lormor*, 172 Wn.2d 85, 90, 257 P.3d 624 (2011).

---

[3] The *Bone-Club* factors, which the trial court must weigh on a case-by-case basis to close a courtroom, are:

"1. The proponent of closure or sealing must make some showing [of a compelling interest], and where that need is based on a right other than an accused's right to a fair trial, the proponent must show a 'serious and imminent threat' to that right.

"2. Anyone present when the closure motion is made must be given an opportunity to object to the closure.

"3. The proposed method for curtailing open access must be the least restrictive means available for protecting the threatened interests.

"4. The court must weigh the competing interests of the proponent of closure and the public.

"5. The order must be no broader in its application or duration than necessary to serve its purpose."

*Bone-Club*, 128 Wn.2d at 258-59 (alteration in original) (quoting *Allied Daily Newspapers of Wash. v. Eikenberry*, 121 Wn.2d 205, 210-11, 848 P.2d 1258 (1993)).

In rejecting Mr. Guzman's public trial contention in 2008, this court reasoned that the courtroom was never closed; rather, other prospective jurors were excluded from the individual questioning. The conclusion that the courtroom was not closed was based on statements made by the trial court as reported in the verbatim report of proceedings. Whether the courtroom was closed remains the controlling issue in our reexamination of Mr. Guzman's challenge.

In *Lormor*, our Supreme Court observed that the rules established by *Bone-Club* and later cases "come into play when the public is fully excluded from proceedings within a courtroom." 172 Wn.2d at 92. It found that the rules did not apply, and the *Bone-Club* factors were not required to be considered, where the trial court excluded the defendant's terminally ill daughter out of concern that her medical equipment and needs would distract attention from the proceedings. Having reviewed prior Washington cases, the *Lormor* court held that "a 'closure' of a courtroom occurs when the courtroom is completely and purposefully closed to spectators so that no one may enter and no one may leave." *Id.* at 93.

Where no closure exists, any objection to the procedure followed by the trial court is "analyze[d] . . . as a matter of courtroom operations, where the trial court judge possesses broad discretion." *Id.* A trial court's exclusion of one spectator from trial, or a set of persons, such as witnesses excludable under ER 615, is reviewed for abuse of

discretion and reversed only if the exercise of discretion is manifestly unreasonable or based upon untenable grounds or reasons. *Id.* at 94.

A trial court does not abuse its discretion by allowing individual juror questioning apart from other jurors. *See State v. Vega*, 144 Wn. App. 914, 917, 184 P.3d 677 (2008). Such questioning may be allowed "considering the court's duty to determine if, given a juror's state of mind, the juror can try the case impartially and without prejudice to the substantial rights of either party" and "mindful of the risks of tainting the neutrality of the other jurors by collective questioning." *Id.*

Mr. Guzman fails to meet his burden of demonstrating a closure. The trial court did not abuse its discretion by engaging in individualized questioning of jurors outside the presence of other jurors. Mr. Guzman is not entitled to relief on the basis of this first ground.[4]

## II. Hearsay Evidence

Mr. Guzman's petition also renews his challenge to the admission of hearsay testimony by Mr. Walls and Mr. Mallonee. The same assignment of error was rejected on direct review on the basis that the statement made to Mr. Walls by his girl friend was

---

[4] In his reply brief, Mr. Guzman suggests that the determination of whether there was a "closure" requires an evidentiary hearing. To obtain an evidentiary hearing, however, "the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief." *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992); *see also In re Pers. Restraint of Spencer*, 152 Wn. App. 698, 707, 218 P.3d 924 (2009). Mr. Guzman fails to make that showing.

an excited utterance and therefore an exception from the hearsay rule, and the statement made to Mr. Mallonee by his girl friend, while hearsay and not subject to an exception, was harmless because it was a minor aspect of his testimony and consistent with other evidence.

Mr. Guzman fails to argue or otherwise demonstrate that the ends of justice would be served by relitigating the trial court's decision on the hearsay objections. They were adequately addressed in the direct appeal. *See Guzman*, 2008 WL 3523940, at *8-9.

### III. Sufficiency of the Evidence

We turn now to the new issues raised by Mr. Guzman's petition, the first being his contention that insufficient evidence supports his two convictions of second degree rape. Sufficiency of the evidence is a question of constitutional magnitude because due process requires the State to prove its case beyond a reasonable doubt. *In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 93, 66 P.3d 606 (2003). "Evidence is sufficient to convict when 'viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*'" *Id.* (internal quotation marks omitted) (quoting *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980)).

Here, the jury was instructed on the reasonable doubt standard and found that the State met its burden of proof. The crime of rape in the second degree includes sexual intercourse engaged in by a health care provider with a client during a treatment session.

12

RCW 9A.44.050(d). The statutory definition of "sexual intercourse" includes "any penetration of the vagina . . . however slight, by an object." RCW 9A.44.010(1)(b). "A finger is clearly 'an object.'" *State v. Tili*, 139 Wn.2d 107, 111 n.3, 985 P.2d 365 (1999). Each victim testified that during the course of Mr. Guzman's performing a massage, she felt his finger or fingers enter her vagina. Ample evidence was presented on the essential elements of second degree rape for both counts.

## IV. Ineffective Assistance of Counsel

Mr. Guzman next contends that his lawyer provided ineffective assistance of counsel in two instances: first, when he failed to request a limiting instruction after the testimony of Mr. Mallonee, and second, when he failed to object to the admission of allegedly improper opinion testimony by Dena Mason, a school counselor and co-worker of one of the victims.

In a personal restraint petition, if the petitioner successfully shows ineffective assistance of counsel, the actual and substantial prejudice required for relief on collateral review has been shown. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 846-47, 280 P.3d 1102 (2012). To establish a claim of ineffective assistance of counsel, the defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Nichols*, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007). *Deficient performance* is that which falls "below an objective standard of

13

reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). *Prejudice* is shown by "a reasonable probability that, but for counsel's unprofessional errors, the outcome of the proceeding would have been different." *Nichols*, 161 Wn.2d at 8. If a party fails to satisfy one of the *Strickland* prongs, a reviewing court need not consider the other. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

In evaluating claims for ineffectiveness, courts are highly deferential to counsel's decisions and there is a strong presumption that counsel performed adequately. *Strickland*, 466 U.S. at 689-91. Strategic and tactical decisions are not grounds for error. *Id.*; *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004).

We first address Mr. Guzman's claim that his lawyer was ineffective for failing to request a limiting instruction after the trial court admitted Mr. Mallonee's hearsay testimony of statements made by his girl friend. The court ruled that the victim's statements had not been an excited utterance but were admissible as an "operative fact" not offered for truth. Report of Proceedings (RP) (Aug. 23, 2006) at 136. This claim of ineffective assistance is readily resolved on the basis of the prejudice prong, because in affirming the convictions this court concluded that the hearsay from Mr. Mallonee should not have been admitted but was harmless. That remains our conclusion: the hearsay, even without a limiting instruction, was harmless. Because Mr. Guzman does not show prejudice, we need not consider whether his lawyer's performance was defective.

14

The second instance of alleged ineffective assistance was Mr. Guzman's lawyer's failure to object to testimony of Ms. Mason, a counselor at an elementary school where one of the victims was a teacher. The victim had been raped during a massage on December 31, and Ms. Mason testified that after Christmas vacation, the victim appeared to her to be "transform[ed]," "inward," and "having a hard time functioning." RP (Aug. 24, 2006) at 11. Ms. Mason approached the victim and asked whether everything was all right. The victim later opened up with her about what had happened. At trial, Ms. Mason characterized the behavior that she observed in the victim as being "classic" symptoms of trauma. *Id.* at 13.

Mr. Guzman characterizes Ms. Mason as a lay witness and argues that under ER 701, a lay witness may offer opinions or inferences that help the jury understand the witness's testimony "and that are not based upon scientific or specialized knowledge." PRP at 31 (citing *State v. Montgomery*, 163 Wn.2d 577, 183 P.3d 267 (2008)).

Where an ineffective assistance claim is based on a failure to challenge the admission of evidence, a defendant must show (1) an absence of legitimate strategic or tactical reasons supporting the challenged conduct, (2) that an objection to the evidence would likely have been sustained, and (3) that the result of the trial would have been different had the evidence not been admitted. *State v. Saunders*, 91 Wn. App. 575, 578, 958 P.2d 364 (1998).

15

Mr. Guzman fails to show that an objection to the evidence was likely to be sustained because he fails to address the admissibility of Ms. Mason's testimony under ER 702. That rule provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or training, or education, may testify thereto in the form of an opinion or otherwise." ER 702. To determine whether an opinion is admissible under ER 702, the court engages in a two-part inquiry: "'(1) does the witness qualify as an expert; and (2) would the witness's testimony be helpful to the trier of fact.'" *State v. McPherson*, 111 Wn. App. 747, 761, 46 P.3d 284 (2002) (quoting *State v. Guilliot*, 106 Wn. App. 355, 363, 22 P.3d 1266 (2001)).

The State established that Ms. Mason worked as a certified educational school counselor and had been employed as a licensed mental health therapist for seven years. She held master's degrees in psychology and administration. As a member of the school district's crisis team responsible for counseling victims of any large-scale traumatic event, she had received training in posttraumatic stress syndrome and counseling victims of trauma. In light of her specialized knowledge, outside the competence of an ordinary lay person and therefore helpful, one cannot say that an objection to her opinion testimony was likely to have been sustained. *Cf. Carlton v. Vancouver Care, LLC*, 155 Wn. App. 151, 163, 231 P.3d 1241 (2010) (holding such testimony admissible, stating that "[a]s many courts have realized, rape trauma syndrome evidence is admissible to

16

help explain the trauma process and the manner in which a victim reacts to rape"); *State v. Stevens*, 58 Wn. App. 478, 496, 794 P.2d 38 (1990) ("expert testimony generally describing symptoms exhibited by victims may be admissible when relevant and when not offered as a direct assessment of the credibility of the victim"). Mr. Guzman is not entitled to relief on this ground.

## V. Prosecutorial Misconduct

Finally, Mr. Guzman seeks relief on the ground that the prosecutor improperly commented on Mr. Guzman's credibility when he referred during rebuttal argument to doctored credentials for Mr. Guzman that were found in a search of the spa and were admitted in evidence. Drawing the jury's attention to a line on a licensing document indicating whether Mr. Guzman had "passed" or "failed" a licensing exam and that appeared to have been altered, the prosecutor argued:

> Why is that important? Because of this word "pass" that he was trying to pass off, perpetrating a fraud.
> Again, that goes to credibility. Credibility of their witnesses.

RP (Aug. 25, 2006) at 73. Mr. Guzman's lawyer objected and requested a sidebar.

Outside of the hearing of the jury, Mr. Guzman's lawyer complained that the prosecutor was commenting improperly on Mr. Guzman's choice not to testify. The court was more concerned that this was rebuttal argument, telling the prosecutor that "right now you're . . . far afield of [anything brought up by the defense]." *Id.* at 74. The

17

court told the prosecutor to move on. The prosecutor said nothing more about the exhibits or credibility.

To establish a claim for prosecutorial misconduct, the defendant bears the burden of showing that the prosecutor's conduct was both improper and prejudicial. *State v. Thorgerson*, 172 Wn.2d 438, 442, 258 P.3d 43 (2011) (quoting *State v. Magers*, 164 Wn.2d 174, 191, 189 P.3d 126 (2008)). It is improper to vouch for the credibility of a witness or express the personal opinion on the guilt or innocence of the accused. *See State v. Reed*, 102 Wn.2d 140, 145, 684 P.3d 699 (1984); *State v. Horton*, 116 Wn. App. 909, 921, 68 P.3d 1145 (2003). On the other hand, "[t]he prosecutor enjoys reasonable latitude in arguing inferences from the evidence, including inferences as to witness credibility." *State v. Gregory*, 158 Wn.2d 759, 810, 147 P.3d 1201 (2006). "'[T]here is a distinction between the individual opinion of the prosecuting attorney, as an independent fact, and an opinion based upon or deduced from the testimony in the case.'" *State v. McKenzie*, 157 Wn.2d 44, 53, 134 P.3d 221 (2006) (emphasis omitted) (quoting *State v. Armstrong*, 37 Wash. 51, 54-55, 79 P. 490 (1905)).

The prosecutor pointed to evidence that a rational juror could view as reflecting negatively on the defendant's credibility. He asked the jury to draw that negative inference. The argument was not an improper expression of personal opinion as to guilt. We therefore need not address prejudice.

18

No. 29118-9-III
*In re Pers. Restraint of Guzman*

The petition for review is dismissed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Kulik, J.

19