# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of:<br><br>JEREMY DAVID ROSENBAUM,<br><br>                Petitioner. | No. 47267-8-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Jeremy D. Rosenbaum seeks relief from personal restraint imposed following his convictions for two counts of felony harassment, two counts of witness tampering, and one count of bribing a witness. In his personal restraint petition (PRP), Rosenbaum contends that his convictions violate his double jeopardy rights, that insufficient evidence supports his convictions, that the trial court erred by admitting three exhibits consisting of numerous text messages, and that the trial court erred by excluding "other suspect" evidence as well as evidence of a victim's drug use. Because Rosenbaum does not show error that entitles him to relief, we deny the petition.

## FACTS

Rosenbaum lived in a house with its owner, Martin Craig Spangler, and Rosenbaum's girlfriend, Ally Gibson. On November 21, 2013, Rosenbaum and Gibson had an argument that became physical. During the argument, Rosenbaum closed Gibson's arm in a door. Gibson called

a friend, Julia Weed, to come get her. Although they were not actually related, Gibson often referred to Weed as her sister. Gibson and Weed left together, and Gibson began staying with Weed.

Over the next two days, Rosenbaum called, texted, e-mailed, and Facebooked Gibson. Rosenbaum called Gibson 30 to 40 times and texted her over 100 times. The text messages from Rosenbaum were from three separate phone numbers, one of which belonged to Spangler. In response, both Gibson and Weed sent text messages from Weed's phone number.

Gibson and Weed knew that the majority of the texts were from Rosenbaum because Gibson knew at least one of the phone numbers and Rosenbaum identified himself in other text messages. The context of the messages also contributed to their knowledge.

In the text messages, Rosenbaum made many threats, including threats to kill or to beat up one or both of the women. On November 24, Gibson and Weed reported the threats and harassment to the police. They also provided the police with copies of the text messages.

On the day the women reported the conduct to the police, the police arrested Rosenbaum at his house. The State charged Rosenbaum with two counts of felony harassment involving Gibson and Weed, respectively (counts I & II); one count of bribing a witness (count III); and, two counts of witness tampering involving Weed and Gibson, respectively (counts IV & V).

A jury found Rosenbaum guilty of all charges. It returned special verdicts on both harassment charges, finding that Rosenbaum was previously convicted of violating a protection order against people specifically named in the order. It also returned special verdicts that Rosenbaum's threat to cause Weed bodily harm consisted of a threat to kill and placed her in reasonable fear that the threat would be carried out, and that Rosenbaum and Gibson were members

of the same family or household. The special verdicts elevated the two harassment convictions to felonies. RCW 9A.46.020(2)(b).

Pretrial, Rosenbaum moved to strike references to his drug use, as well as references to Gibson's and Weed's drug use. The references were in text messages and letters submitted as evidence. He argued the evidence was not relevant. The State responded it did not intend to offer that evidence and that it attempted to redact most references. The trial court granted the motion.

The State later moved, before trial, to specifically exclude evidence of Gibson's drug use because it was irrelevant and inadmissible under ER 404(b). Rosenbaum agreed that the evidence was irrelevant unless a party opened the door and no one objected. The trial court granted the motion.

During trial, the State introduced three exhibits containing the text messages sent to the two women over a three-day period from three different phones. Rosenbaum objected to their admission based on a lack of foundation. The trial court overruled the objection.

In the text messages, Rosenbaum threatened to kill one of the women and to beat up the other. Both women testified that they were placed in fear to some degree that these threats would be carried out. Rosenbaum testified that some of the text messages were sent by Spangler, who died a few weeks before trial.

In addition to the text messages, the State offered evidence of Rosenbaum's prior conviction and letters written by Rosenbaum while he was in jail. The State offered and the court admitted evidence of Rosenbaum's prior conviction for violating a protection order against the protected party. Rosenbaum also stipulated that he wrote three letters while in jail, two to his mother and one to a friend, and that the letters were admissible.

In the letters, Rosenbaum outlined what he needed Gibson and Weed to say at trial, and in one letter, Rosenbaum stated he would offer money to one of the women for her testimony. In a letter addressed to his mother, Rosenbaum stated, "We gotta get her sister on our side, . . . hell, I'll pay $ if I have to." Report of Proceedings (RP) (April 10, 2014) at 272. He also wrote, "Is [Gibson] gonna get her sister on our side or is she being her sister not going to show at trial that would mean not guilty." RP (April 10, 2014) at 207. Rosenbaum's mother never responded to him, and Weed testified nobody contacted her to change her testimony.

Rosenbaum also wrote a letter from jail to a friend suggesting how the women should testify if they chose to appear at trial. In the letter, he included a separate note to Gibson. He stated, "You need to get your sister on the team." RP (April 10, 2014) at 266-67. At trial, Rosenbaum testified that he was only trying to ensure that the two women told the truth.

Prior to resting his case, Rosenbaum moved to dismiss the bribery charge because there was no evidence the offer to pay was communicated. After hearing argument, the trial court denied the motion.

Rosenbaum files this PRP seeking relief.

## ANALYSIS

I.      PRP STANDARDS OF REVIEW

To be entitled to relief through a PRP, a petitioner must show constitutional error that resulted in actual and substantial prejudice or nonconstitutional error that resulted in a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 812, 792 P.2d 506 (1990). In evaluating a PRP, if the petitioner fails to make a prima facie showing of either actual and substantial prejudice or a fundamental defect, we deny the PRP. *In re Pers. Restraint of Schreiber,* 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

II.    DOUBLE JEOPARDY

A.    Same Criminal Conduct

Rosenbaum argues that his two convictions for felony harassment violate double jeopardy. Rosenbaum also argues that his two convictions for witness tampering and his conviction for bribing a witness violate double jeopardy. We disagree.

The double jeopardy clauses of the Fifth Amendment to the United States Constitution and article I, section 9 of the Washington State Constitution prohibit the imposition of multiple punishments for a single offense. *State v. French*, 157 Wn.2d 593, 612, 141 P.3d 54 (2006). If each crime requires proof of a fact that the other does not, the defendant's convictions for multiple crimes do not constitute double jeopardy. *State v. Freeman*, 153 Wn.2d 765, 772, 108 P.3d 753 (2005).

Rosenbaum's argument fails because each harassment conviction involved a different victim and thus required proof of different facts. Different facts also elevated the convictions to felonies. One felony count of harassment involved Rosenbaum's threat to kill the victim. RCW 9A.46.020(2)(b)(ii). The other felony harassment count required proof that Rosenbaum had previously been convicted of violating a protection order against a person named in that order. RCW 9A.46.020(2)(b)(i).

Additionally, Rosenbaum's two witness tampering convictions involved different victims, and these crimes did not require the State to prove a fact required to prove the bribery charge; i.e., that Rosenbaum offered to confer a benefit on a witness with the intent to influence her testimony. RCW 9A.72.090(1)(a). Rosenbaum's double jeopardy arguments fail.

B.    Merger

Rosenbaum also makes the related claim that the trial court should have merged his convictions.  The merger doctrine applies when the degree of one offense is raised by conduct that the legislature has separately criminalized.  *Freeman*, 153 Wn.2d at 772-73.  Under those circumstances, courts presume that the legislature intended to punish both offenses through a greater sentence for the greater crime and that the offenses merge.  *Freeman*, 153 Wn.2d at 773. The merger doctrine does not apply to Rosenbaum's offenses, as none of them are degree offenses that include the proof of another offense as an element.

III.    SUFFICIENCY OF THE EVIDENCE

Rosenbaum raises an additional claim of constitutional error in challenging the sufficiency of the evidence supporting his convictions.  *See In re Pers. Restraint of Tortorelli*, 149 Wn.2d 82, 93, 66 P.3d 606 (2003) (because due process requires the State to prove its case beyond a reasonable doubt, sufficiency of the evidence is an issue of constitutional magnitude).  Evidence is sufficient to support a conviction if, viewed in the light most favorable to the State, it permits any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Tortorelli*, 149 Wn.2d at 93.

A.    Felony Harassment

Rosenbaum first argues that the evidence was insufficient to support his two felony harassment convictions.  He also contends that the State failed to prove that Rosenbaum conveyed a "true threat."  Person Restraint Petition (PRP) at 13.  The trial court instructed the jury that it had to find that Rosenbaum threatened each of the two victims with bodily injury immediately or in the future, that his words or conduct placed his victims in reasonable fear that the threats would be

6

carried out, that he acted without lawful authority, and that the threats happened in Washington. RCW 9A.46.020(1)(a)(i) & (1)(b).

"To avoid unconstitutional infringement of protected speech, [the harassment statute] must be read as clearly prohibiting only 'true threats.'" *State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004) (quoting *State v. Williams*, 144 Wn.2d 197, 208, 26 P.3d 890 (2001) (internal quotations omitted)). "A 'true threat' is 'a statement made 'in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life' of [another individual]." *Williams*, 144 Wn.2d at 208-09 (quoting *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998)).

The harassment convictions were felonies because the jury found, by separate special verdicts, that Rosenbaum threatened to kill one victim and that he was previously convicted of violating a protection order against a person named in that order. RCW 9A.46.020(2). The State introduced text messages in which Rosenbaum threatened to kill one victim and beat up the other. Both victims testified that they were placed in fear that these threats would be carried out. The State provided evidence of Rosenbaum's prior conviction, on plea of guilty, for violating a protection order against the protected party. Any credibility determinations were for the trier of fact. *State v. Camarillo*, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). When viewed in the light most favorable to the State, sufficient evidence was presented to permit a rational trier of fact to find the essential elements of both felony harassment charges and the special verdicts.

B.      Bribery

Rosenbaum also challenges the sufficiency of the evidence supporting his conviction for bribing a witness. To convict Rosenbaum of this offense, the jury had to find beyond a reasonable

doubt that he offered to confer a benefit on a witness or a person he had reason to believe was about to be a witness in any official proceeding. RCW 9A.72.090(1). The jury also had to find that he acted with the intent to influence the testimony of that person or to induce that person to avoid legal process or to absent herself from an official proceeding. RCW 9A.72.090(1).

The evidence showed that Rosenbaum wrote to his mother, stating that he would offer money to one of his victims to influence her testimony. He wrote, "We gotta get her sister on our side, . . . hell, I'll pay $ if I have to." RP (April 10, 2014) at 272. Earlier in the letter, Rosenbaum also wrote that Gibson needed to get her sister on his side and outlined what he needed both women to say.

Rosenbaum emphasizes that he did not convey an offer directly to the witness. However, the statute does not explicitly require communication of the offer to the person whose testimony is sought to be influenced. RCW 9A.72.090(1). Statutory interpretation requires that we give effect to the legislature's intent and purpose in passing the law. *State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003). Statutory interpretation begins with the statute's plain meaning. *State v. Landsiedel*, 165 Wn. App. 886, 890, 269 P.3d 347 (2012). When the plain language is unambiguous, the legislative intent is apparent and we will not construe the statute otherwise. *J.P.*, 149 Wn.2d at 450.

We discern the plain meaning of a statute from the ordinary meaning of its language in the context of the whole statute, related statutory provisions, and the statutory scheme as a whole. *State v. Evans*, 177 Wn.2d 186, 192, 298 P.3d 724 (2013). We also consider "'all the terms and provisions of the act in relation to the subject of the legislation, the nature of the act, the general object to be accomplished and consequences that would result from construing the particular statute in one way or another.'" *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994) (quoting

8

*State v. Huntzinger*, 92 Wn.2d 128, 133, 594 P.2d 917 (1979)).  Nontechnical terms are given their

ordinary dictionary meaning if they are not otherwise defined by a statute or jury instruction.  *State*

*v. Kintz*, 169 Wn.2d 537, 547, 238 P.3d 470 (2010).

Rosenbaum argues the language of the statute should be interpreted to require a

communicated offer.  We conclude the statute is not ambiguous and disagree with Rosenbaum.

The statute requires that a defendant must intend to convey an offer to influence testimony

or to induce the witness to absent himself or herself from the proceeding.  RCW 9A.72.090(1).

The statute is silent as to a communication requirement.  There is no requirement that the offer to

confer a benefit actually be conveyed to the intended recipient.  It does not require that the

proposed recipient of the bribe know of the bribe.  Nor does it require that the proposed recipient

change his or her testimony.  The plain meaning of the statute is clear from the ordinary meaning

of the language.  Reviewing the evidence in the light most favorable to the State, sufficient

evidence supports Rosenbaum's conviction for bribing a witness.

C.      Witness Tampering

Rosenbaum's final sufficiency challenge is to his witness tampering convictions.

Rosenbaum contends there was no proof the witness actually altered her testimony or that she read

the letter.  Further, he argues that the State failed to prove the requisite mens rea for the crime

because he only wanted the witnesses to tell the truth.  We disagree.

A person is guilty of witness tampering if he attempts to induce a witness or a person he

has reason to believe is about to be called as a witness in any official proceeding to testify falsely,

withhold testimony, or fail to appear.  RCW 9A.72.120(1).  The witness tampering statute does

not require proof of the defendant's specific intent to obstruct justice.  *State v. Rempel*, 53 Wn.

App. 799, 805, 770 P.2d 1058 (1989), *reversed on other grounds* 114 Wn.2d 77, 785 P.2d 1134

(1990); *see also Soto-Rodriguez v. Holder*, 607 Fed. Appx. 648, 649 (9th Cir. 2015). It is sufficient to prove the defendant knew the person approached was going to be a witness. *Remple*, 53 Wn. App. at 805.

The charges against Rosenbaum were based on letters he wrote to family and friends from jail suggesting how his alleged victims should testify if they chose to appear at trial. Whether Rosenbaum was credible in testifying that he was only trying to ensure that the two women told the truth was for the jury to determine. Sufficient evidence supported the jury verdict.

IV.     EVIDENTIARY RULINGS

Rosenbaum contends that the trial court erred by improperly admitting or excluding specific evidence. These claims of error are nonconstitutional. *See State v. Stenson*, 132 Wn.2d 668, 709, 940 P.2d 1239 (1997) (generally, evidentiary errors do not constitute constitutional error). Therefore, Rosenbaum must show that the alleged trial court errors resulted in a complete miscarriage of justice. *Cook*, 114 Wn.2d at 812.

We review evidentiary rulings for abuse of discretion. *State v. Williams*, 137 Wn. App. 736, 743, 154 P.3d 322 (2007). A trial court abuses its discretion when its evidentiary ruling is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *Williams*, 137 Wn. App. at 743 (quoting *State v. Downing*, 151 Wn.2d 265, 272, 87 P.3d 1169 (2004)).

A.     Text Messages

Rosenbaum contends that the trial court erred by admitting the text messages. The State introduced three exhibits containing text messages sent to the victims over a three-day period from three different phones. Rosenbaum objected to admission of one set of text messages based on a lack of foundation. The court overruled the objection. One of the women testified that the texts

were from Rosenbaum based on the phone numbers, the content of the messages, and the fact that the sender identified himself as Rosenbaum. Her testimony established the personal knowledge necessary to render the exhibits admissible. ER 901(b)(1).

Rosenbaum's challenges to the texts' authenticity, and his claim that he did not send the texts, went to the weight of this evidence and not to its admissibility. *See State v. Neslund*, 50 Wn. App. 531, 538, 749 P.2d 725 (1988). The trial court did not abuse its discretion in overruling Rosenbaum's objection and admitting the text messages.

B.      "Other Suspect" Evidence

Rosenbaum next argues that the trial court failed to admit "other suspect" evidence regarding Martin Spangler, who died a few weeks before trial. PRP at 5. He contends the error was a "manifest error affecting a Constitutional right." PRP at 5. We disagree. Rosenbaum testified about Spangler and about Spangler's ownership of the phone from which many of the texts were sent. Additionally, other testimony about Spangler was not excluded. Thus, the record shows no evidentiary error in this regard.

C.      Victim's Drug Use Evidence

Rosenbaum also argues that the trial court denied him the right to present a defense by excluding evidence of one victim's drug use. The record shows that the State moved to exclude this evidence before trial, that Rosenbaum agreed that this evidence was irrelevant, and that he did not object. In addition, Rosenbaum moved to strike the references to drug use in the text messages and Rosenbaum's letters. The record does not show that the trial court erred in excluding this evidence.

11

We deny Rosenbaum's PRP.[1]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Lee, P.J.

Sutton, J.

---

[1] Rosenbaum raised issues for the first time in his reply brief, including his claim of ineffective assistance of counsel. We decline to consider the issues raised for the first time in Rosenbaum's reply brief. RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).