[No. 55608–3.   En Banc.   June 7, 1990.]

*In the Matter of the Personal Restraint of*
MARK EDWIN COOK, *Petitioner.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Cynthia S.C. Gannett* and *Donna L. Wise, Senior Appellate Attorneys,* for respondent.

BRACHTENBACH, J.—Two issues are presented. The first is whether petitioner may advance, in his second personal restraint petition, his claim that his state convictions violated RCW 10.43.040, which, after his conviction and appeal, was interpreted by this court as foreclosing identical state and federal prosecutions. The second is whether petitioner's state convictions were in fact identical to his federal convictions, and thus violated the statute.

Petitioner was involved in a bank robbery in Tukwila, Washington, in January 1976. When police arrived during

the bank robbery, petitioner shot a police officer. In March 1976, he assisted a prisoner's escape from police custody in Seattle. During the prisoner's escape, petitioner shot another police officer.

Based upon these activities, petitioner was convicted in federal district court of bank robbery, conspiracy, and use of a firearm during the commission of a bank robbery. Also based upon these activities, he was convicted in King County Superior Court of two counts of assault in the first degree and one count of aiding a prisoner to escape. His state convictions were affirmed. *See State v. Cook,* 31 Wn. App. 165, 639 P.2d 863, *review denied,* 97 Wn.2d 1018 (1982). Petitioner is currently serving his federal sentences, and, upon their completion, he will be remanded to Washington State's custody to serve his state sentences.

In 1982 petitioner filed his first personal restraint petition challenging the State's revocation without a hearing of his parole from a 1965 conviction, his competency at the time of a 1958 conviction, and the use of his 1958 conviction to enhance his state sentences for the 1965 and 1976 crimes. That petition was dismissed by the Court of Appeals. Court of Appeals cause 12622-9-I (Mar. 22, 1984). This court denied discretionary review. Supreme Court cause 50485-7 (July 26, 1984).

Petitioner filed this second[1] personal restraint petition in 1988 claiming that he was entitled to relief based upon this court's interpretation of RCW 10.43.040 as prohibiting identical state and federal prosecutions (statutory double jeopardy). *See State v. Caliguri,* 99 Wn.2d 501, 664 P.2d 466 (1983). The Court of Appeals read our opinion in *In re Hews,* 99 Wn.2d 80, 88, 660 P.2d 263 (1983) as limiting

---

[1]At least one other personal restraint petition filed by petitioner has reached this court. Supreme Court cause 55023-9. That petition, however, challenged his 1965 convictions and not his 1978 convictions.

relief in personal restraint petitions to errors of constitutional magnitude. That court dismissed this current petition because petitioner's claim was based only upon statutory grounds.

We granted discretionary review, and now deny the petition. The issue raised by petitioner is cognizable by way of a personal restraint petition. However, we deny the petition on the basis that petitioner's convictions do not offend RCW 10.43.040.

Initially, we note that the Legislature has recently created new time limits for "collateral attacks," including those advanced in personal restraint petitions. *See* Laws of 1989, ch. 395, codified at RCW 10.73.090–.140. Because Mr. Cook's petition was filed before this legislation takes effect, *see* RCW 10.73.130, those statutory limitations are not applicable here.

Our state constitution grants the Supreme Court jurisdiction to hear petitions for writs of habeas corpus. Const. art. 4, § 4. To implement this jurisdiction at the appellate level, we have adopted the personal restraint petition. *See* RAP 16.3–16.15; *Toliver v. Olsen,* 109 Wn.2d 607, 611, 746 P.2d 809 (1987).

We first consider whether RAP 16.4(d) prevents petitioner from advancing this second petition. Next we consider whether a personal restraint petition can be used to advance a challenge to a conviction based on statutory grounds which were not raised at trial or on direct appeal. We note that, at the time of petitioner's conviction, the "double jeopardy" statute existed but had not yet been interpreted as encompassing the protection now sought by petitioner. Finally, we reach the merits, and consider whether petitioner has established a violation of RCW 10.43.040 by demonstrating that his state convictions were in fact identical to his federal convictions.

### RAP 16.4(d)

RAP 16.4(d) provides that "[n]o more than one petition for similar relief on behalf of the same petitioner will be entertained without good cause shown." The State argues that petitioner seeks relief similar to that sought in his first petition, and that he has not demonstrated good cause. Therefore, the State urges, RAP 16.4(d) bars this second petition.

The interpretation of RAP 16.4(d) urged by the State was adopted by this court in *In re Haynes,* 95 Wn.2d 648, 652, 628 P.2d 809 (1981), *overruled in part in In re Haverty,* 101 Wn.2d 498, 503, 681 P.2d 835 (1984), *overruled on other grounds in In re Hews,* 99 Wn.2d 80, 660 P.2d 263 (1983). In *Haynes* we interpreted RAP 16.4(d) as relating to the *type* of relief sought. Therefore because both petitions in that case sought "relief from restraint," they were "similar" under the rule and, absent a showing of good cause, the second petition was barred. *Haynes,* at 653.

Three years later, however, we reexamined RAP 16.4(d). *In re Haverty, supra* at 502. We concluded that the United States Supreme Court's construction of similar language in a federal statute was more consistent with recent decisions of this court. We noted the Supreme Court's conclusion that successive petitions are only to be dismissed where the grounds for relief had previously been "heard and determined," or where there was an abuse of the writ or motion remedy. *Haverty,* at 503 (citing *Sanders v. United States,* 373 U.S. 1, 15, 17, 10 L. Ed. 2d 148, 83 S. Ct. 1068 (1963)).

Thus, in contrast to the analysis in *Haynes,* we interpreted our rule's "similar relief" language as relating to the *grounds* advanced in the first petition rather than the *type* of relief sought. *Haverty,* at 502–03. Because the issues raised in the second petition were not raised in Haverty's prior petition, we concluded that the petition was not barred by RAP 16.4(d).

We indicated that our construction of RAP 16.4(d) was "at least with respect to personal restraint petitions which allege prejudicial constitutional error affecting the trial's

truth–finding function." *Haverty,* at 503. We expressly declined to decide whether the *Haynes* construction of the rule remained valid for petitions not alleging prejudicial constitutional error. *Haverty,* at 503 n.1.

■ Now we resolve that issue, and hold that the construction of RAP 16.4(d) adopted in *Haverty* applies also to petitions advancing nonconstitutional issues. RAP 16.4(d) is simply a procedural rule, *Haverty,* at 504, and in light of other restrictions upon collateral attacks, imposed by recent legislation and by substantive burdens on personal restraint petitioners (see discussion below), there is no reason to interpret the rule differently in the context of personal restraint petitions based upon statutory challenges.

Applying the analysis we used in *Haverty* requires that we determine whether petitioner's grounds for relief have been "heard and determined" in a previous petition and whether petitioner is abusing the personal restraint petition process. Petitioner's first personal restraint petition was based on grounds entirely different from those supporting this second petition. In his first petition he did not challenge his restraint as violating double jeopardy, but challenged the State's revocation without a hearing of his parole from a prior conviction, his competency at the time of a prior conviction, and the use of a prior conviction in his sentencing for the assault and aiding in a prisoner's escape convictions. His double jeopardy claim was not "heard and determined" in his first personal restraint petition and there is no evidence that petitioner is abusing the personal restraint petition process. Therefore, RAP 16.4(d) does not operate to foreclose consideration of this argument in a second petition.

### Seeking Collateral Relief on Statutory Grounds Not Raised Previously

Next we consider whether a statutory challenge which was not raised at trial or on direct appeal may be considered in a personal restraint petition.

Petitioner's claim for relief is the double jeopardy protection recognized in *State v. Caliguri, supra.* In *Caliguri* we expressly did not rely upon the double jeopardy clauses of either the state or federal constitutions for the source of this protection, but instead held that RCW 10.43.040 provides protection from the double jeopardy threatened by identical federal and state prosecutions. *Caliguri,* at 511–12.

At the time of petitioner's convictions, RCW 10.43.040 had not yet been interpreted as providing protection from double jeopardy threatened by identical state and federal prosecutions. However, the statute had long been in existence, *see* Laws of 1909, ch. 249, § 19, and arguments for similar protection had been advanced and accepted in other jurisdictions. *See, e.g., People v. Lo Cicero,* 14 N.Y.2d 374, 378, 379, 200 N.E.2d 622, 251 N.Y.S.2d 953 (1964); *People v. Belcher,* 11 Cal. 3d 91, 97, 520 P.2d 385, 113 Cal. Rptr. 1 (1974), *cited in State v. Caliguri,* 99 Wn.2d 501, 512, 664 P.2d 466 (1983).

Petitioner did argue at his trial and on direct appeal that his state prosecutions violated his right to be free from double jeopardy. In support of this claim, however, he did not rely upon RCW 10.43.040, but instead focused upon the state and federal constitutions, and upon a different, inapplicable state statute. *State v. Cook,* 31 Wn. App. 165, 177, 639 P.2d 863, *review denied,* 97 Wn.2d 1018 (1982).

Petitioner contends that the plain language of RAP 16.4(c) supplies the authority for challenging his conviction in this collateral attack. He argues that he is entitled to relief if he can demonstrate that his restraint is "unlawful" under the rule. He claims that his challenge fits within the grounds for relief enunciated in RAP 16.4(c)(1), (2), and (4). RAP 16.4(c)(1) provides relief from decisions entered without jurisdiction; (c)(2) provides relief from convictions obtained in violation of the federal or state constitution or state laws; and (c)(4) provides relief when there has been a

significant change in the law, which is material to the conviction, and sufficient reasons exist to require retroactive application of the changed legal standard.

Petitioner is correct that eligibility for relief from personal restraint requires that his grounds fit within those identified in RAP 16.4(c). Historically, however, satisfying the rule has not been the only requirement for relief. We have "observed that collateral relief undermines the principles of finality of litigation, degrades the prominence of the trial, and sometimes costs society the right to punish admitted offenders. These are significant costs which require that collateral relief be limited." *In re Hews,* 99 Wn.2d 80, 86, 660 P.2d 263 (1983). Furthermore, collateral review is not a substitute for appeal. *In re Hews, supra* at 86. Moreover,

> [a] petitioner cannot be allowed to institute appeal upon appeal and review upon review in forum after forum ad infinitum. On the other hand, collateral review must be available in those cases in which petitioner is actually prejudiced by the error.

(Citation omitted.) *In re Taylor,* 105 Wn.2d 683, 688, 717 P.2d 755 (1986). Thus, to balance these interests, collateral attacks on convictions, whether based on constitutional or nonconstitutional grounds, are limited, but not so limited as to prevent the consideration of serious and potentially valid claims. *Taylor,* at 686, 688.

In the past collateral relief has been restricted by imposing technical procedural bars to limit review. For example, we have refused to consider nonconstitutional issues, which could have been, but were not, advanced at trial or on direct appeal. *E.g., In re Barr,* 102 Wn.2d 265, 269, 684 P.2d 712 (1984). Applying this rule, petitioner's failure to raise RCW 10.43.040 at his trial or in his direct appeal would arguably prevent him from now raising the argument in a personal restraint petition. Now we consider the continued validity of this technical limitation on personal restraint petitions raising nonconstitutional issues.

Until 1983 this ban also applied, at least expressly, to constitutional arguments. Then in *In re Hews, supra* at 87, we rejected the automatic restriction and, in its place, adopted the current approach which permits the raising of constitutional arguments for the first time in a collateral attack, if the petitioner can establish that the grounds he relies on in requesting relief are serious enough to justify overriding interests of finality. This determination necessarily requires an examination of the merits of a petition. Specifically, the petition is considered when the error upon which it is based results in actual prejudice. *Hews,* at 87.[2]

Our decision to henceforth decide personal restraint petitions raising constitutional errors on their merits rather than by applying a procedural screening process was based upon our realization that the procedural rule had "proved to be too blunt an instrument for the delicate operation of determining claims which should be given collateral review." *In re Hagler,* 97 Wn.2d 818, 826, 650 P.2d 1103 (1982). With respect to constitutional issues, the procedural screening device had not been applied consistently. *Hagler,* at 826. Before *Hews,* when the automatic procedural bar to considering constitutional issues not raised earlier was expressly rejected, we had refused to apply that bar when the petitioner's interest in having his claim considered outweighed the interest in finality of judgments. *Hagler,* at 826.

In place of the former procedural bar, in the context of constitutional error, a petitioner must satisfy his threshold burden of demonstrating actual and substantial prejudice. *In re Haverty,* 101 Wn.2d 498, 504, 681 P.2d 835 (1984); *Hews,* at 88. Unless a petitioner can make a prima facie showing of such prejudice, his petition will be dismissed.

---

[2]*See generally* Note, *An Unappealed Conviction May Be Collaterally Attacked by a Personal Restraint Petition Upon Constitutional Grounds, Provided That Petitioner Can Meet the Threshold Burden of Proving Actual Prejudicial Error Beyond a Balance of Probabilities,* 19 Gonz. L. Rev. 185 (1983).

*Hews,* at 88; *In re Reismiller,* 101 Wn.2d 291, 298, 678 P.2d 323 (1984).

In the federal system, when collateral relief is based on a nonconstitutional challenge, the required preliminary showing is stricter than the "actual prejudice" standard. The claimed error must constitute "a fundamental defect which inherently results in a complete miscarriage of justice". *Hill v. United States,* 368 U.S. 424, 428, 7 L. Ed. 2d 417, 82 S. Ct. 468, *reh'g denied,* 369 U.S. 808, 7 L. Ed. 2d 556, 82 S. Ct. 640 (1962); *United States v. Addonizio,* 442 U.S. 178, 185, 60 L. Ed. 2d 805, 99 S. Ct. 2235 (1979).

The showing required to establish eligibility for postconviction relief in the federal courts and the prejudice required of a state petitioner advancing a constitutional argument identify those types of errors significant enough to justify overriding principles of finality. These threshold showings differ from the former procedural bars in that they involve inquiry into the merits of petitioner's argument. If a preliminary consideration of the merits evidences sufficient prejudicial constitutional error (under the actual prejudice approach) or implicates a fundamental defect which might result in a complete miscarriage of justice (under the federal approach), then petitioner will have established that the error is of the type that should be subject to full collateral review.

Our consideration of personal restraint petitions raising nonconstitutional issues reveals an inconsistent application of the procedural bar similar to that noted in *Hagler* with respect to constitutional cases. Some personal restraint petition cases, *see, e.g., In re Williams,* 111 Wn.2d 353, 759 P.2d 436 (1988); *In re Carle,* 93 Wn.2d 31, 604 P.2d 1293 (1980), raise, for the first time, issues of a nonconstitutional nature. By reaching the merits of these petitions we have, by implication, rejected the continued validity of an automatic bar to the raising of nonconstitutional issues not raised at trial or on direct appeal.

ABA standards relating to postconviction remedies recommend that consideration of an otherwise valid claim should not "be denied for failure to present it at a prior time unless the withholding of the claim is so serious as to amount to an abuse of process by the applicant." *ABA Standards Relating to Post Conviction Remedies* § 2.1, Commentary at 35 (Approved Draft, 1968). As discussed above, RAP 16.4(d) provides one mechanism for guarding against abuse of the personal restraint petition process. Likewise the newly adopted legislative standards also impose procedural limitations on personal restraint petitions. *See* RCW 10.73.090–.140.

■ Given these other sources of limitations on personal restraint petitions and the history of inconsistent application of the procedural bar, we see no reason to continue to adhere to this additional procedural bar to collateral review. Therefore, we now reject the automatic bar to advancing a nonconstitutional argument in a personal restraint petition merely because the argument was not advanced earlier.

In place of this procedural limitation we adopt the approach used by the federal courts.[3] Thus, to receive collateral review of a conviction on nonconstitutional grounds, a petitioner must establish that the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

Petitioner argues that his state convictions violated his right to be free from double jeopardy. His argument arguably fits into three recognized categories justifying collateral relief. RAP 16.4(c)(1), (2), and (4). Moreover, while his right is protected by statute, it is closely akin to a fundamental constitutional right afforded great respect by this court. *See In re Farney,* 91 Wn.2d 72, 76, 583 P.2d 1210 (1978). Finally, after defendant's convictions, this court

---

[3]In other personal restraint petition cases, *e.g., In re Haverty,* 101 Wn.2d 498, 502–03, 681 P.2d 835 (1984), interpretations of similar federal rules have been looked to for guidance.

interpreted RCW 10.43.040 as providing protection not previously available to defendants, but clearly sought by petitioner during his trial and on direct appeal. Given these considerations, petitioner's nonconstitutional argument is certainly the type meriting collateral review because if his assertions are correct, the upholding of his state convictions would amount to a complete miscarriage of justice. Thus, collateral review of petitioner's argument is appropriate.

To summarize, we hold (1) that a personal restraint petitioner may not raise, in a subsequent (the second or later) petition, an issue (constitutional or nonconstitutional) which was *previously "heard and determined"* absent a showing of good cause; and (2) in any (first or later) personal restraint petition, a petitioner will no longer be automatically barred from raising an issue *not previously raised*.[4] Instead, the appellate court will reach the merits of a constitutional issue when the petitioner demonstrates that the alleged error gives rise to actual prejudice, and will reach the merits of a nonconstitutional issue when the claimed error constitutes a fundamental defect which inherently results in a complete miscarriage of justice.

▆ These holdings affect only the type of challenge which may be raised in a collateral attack on a conviction or sentence. The evidentiary showing required to justify collateral review is not changed.

> When a petitioner files a personal restraint petition collaterally attacking his prior convictions as unconstitutional, more is required than that the petitioner merely claim in broad general terms that the prior convictions were unconstitutional. The facts upon which the petitioner's claim of unlawful restraint is based and the evidence reasonably available to support the factual allegations must be stated.

*In re Williams,* 111 Wn.2d 353, 364, 759 P.2d 436 (1988). Where the record does not provide any facts or evidence on which to decide the issue and the petition instead relies

---

[4]Where RCW 10.73.140 is applicable, in a subsequent petition a petitioner must show good cause why the new grounds were not raised in the previous petition.

solely on conclusory allegations, a court should decline to determine the validity of a personal restraint petition. *Williams*, at 365. We emphasize that the quoted principle from *Williams* is mandatory; compliance with that threshold burden is an absolute necessity to enable the appellate court to make an informed review. Lack of such compliance will necessarily result in a refusal to reach the merits. *Williams*, at 365.

■ After establishing the appropriateness of collateral review, a petitioner will be entitled to relief only if he can meet his ultimate burden of proof, which, on collateral review, requires that he establish error by a preponderance of the evidence. *Hews*, at 89; *see also State v. Kitchen*, 110 Wn.2d 403, 413, 756 P.2d 105 (1988) (personal restraint petitioner must show that, more likely than not, his rights were actually and substantially prejudiced). To determine whether petitioner has met his ultimate burden, we address the merits of petitioner's challenge.

### No RCW 10.43.040 VIOLATIONS

As noted earlier, we have elected to provide protection from identical state and federal prosecutions through RCW 10.43.040. *State v. Caliguri*, 99 Wn.2d 501, 664 P.2d 466 (1983). That statute provides:

> Whenever, upon the trial of any person for a crime, it appears that the offense was committed in another state or country, under such circumstances that the courts of this state had jurisdiction thereof, and that the defendant has already been acquitted or convicted upon the merits, upon a criminal prosecution under the laws of such state or country, founded upon the act or omission with respect to which he is upon trial, such former acquittal or conviction is a sufficient defense.

RCW 10.43.040.

■ The test for whether this statutory double jeopardy protection bars state prosecution is whether the state offense is *in fact* identical to or included within a previous federal prosecution. *State v. Duncan*, 111 Wn.2d 859, 868, 765 P.2d 1300 (1989); *State v. Rudy*, 105 Wn.2d 921, 926, 719 P.2d 550 (1986); *Caliguri*, at 513. It does not matter that the same or similar evidence is used in the state and

federal prosecutions. *Rudy,* at·926, 928–29. So long as conviction for the state crime requires proof of acts *different in character* from those required for conviction of the federal crime, the statute is not violated. *Rudy,* at 926, 929. If the state crime requires proof of a mental state, it constitutes "an act of a different character than . . . [that] to be proven in the federal prosecution," and thus is not based on the same act or omission as the federal crime and so the statute is not violated. *Rudy,* at 926; *Caliguri,* at 514.

In *Rudy* we concluded that the state crimes of burglary and kidnapping were not *in fact* identical to the elements of the federal crime of obstructing interstate commerce by extortion and committing or threatening physical violence in furtherance of a plan or purpose to obstruct interstate commerce. *Rudy,* at 927. We reached this conclusion because the federal crime did not require proof of unlawful entry required to prove the state crime of burglary, nor was unlawful entry included in the statement of overt acts supporting the federal indictment. *Rudy,* at 927.

Likewise,

> two aspects of the State kidnapping charge, intent to inflict mental distress and abduction, would have been, at best, ancillary to proof of the federal charge . . . Thus, the kidnapping charge required proof of acts of a different character than would have been used to prove the federal charge.

*Rudy,* at 928.

Here petitioner was convicted of the federal crimes of bank robbery under 18 U.S.C. § 2113(a) and (d); conspiracy under 18 U.S.C. § 371; and his sentences were enhanced under 18 U.S.C. § 924(c) because he used a firearm during the commission of a felony.

In state court petitioner was convicted of two counts of first degree assault and one count of aiding a prisoner to escape.[5] Petitioner's convictions for first degree assault required proof of intent to kill a human being. His conviction for aiding a prisoner to escape required proof of intent

---

[5]Petitioner's state convictions were for violations of former RCW 9.11.010 and RCW 9.31.020. Repealed by Laws of 1975, 1st Ex. Sess., ch. 260.

to effect or facilitate the escape of a prisoner. *See* former RCW 9.11.010 and RCW 9.31.020.

Petitioner's federal bank robbery conviction under 18 U.S.C. § 2113(d) required proof that during the course of the robbery he "assault[ed] any person, or put[] in jeopardy the life of any person by the use of a dangerous weapon . . .". The assault required for the federal conviction, however, did not include a specific element of intent as did the state assault conviction.

Likewise, petitioner's conviction under 18 U.S.C. § 924(c) did not require proof of the "intent to kill" required for the state assault convictions but only required proof that he "use[d] a firearm to commit any felony . . . or carrie[d] a firearm unlawfully during the commission of any felony . . .". Former 18 U.S.C. § 924(c).

Finally, the indictment charging petitioner with conspiracy under 18 U.S.C. § 371 was based on eight overt acts, which included his shooting of the police officer during the bank robbery, his enabling a prisoner to escape, and his shooting of a second officer during the escape. However, the other five overt acts alleged in the federal indictment were not in any way a part of his state crimes. These included his participation in the Tukwila bank robbery, his alleged recruiting efforts for another planned bank robbery, and his casing of another targeted bank in February 1976.

Only one overt act is required to prove a conspiracy. *United States v. Smith,* 584 F.2d 731, 736 (5th Cir. 1978). Because petitioner's conspiracy conviction was based upon five overt acts which were totally unrelated to the assaults and prisoner escape, that conviction was not in fact identical to his state convictions.

On the merits of the petition, we hold that none of petitioner's state convictions were in fact identical to any of his federal convictions. Therefore, there was no violation of RCW 10.43.040.

CALLOW, C.J., UTTER, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., and McINTURFF, J. Pro Tem., concur.