# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Personal Restraint Petition of:<br><br>CYNTHIA SUE MILLER,<br><br>               Petitioner. | No.  49451-5-II<br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. – Cynthia Sue Miller seeks relief from personal restraint imposed following her conviction for two counts of assault of a child in the first degree, one count of assault of a child in the second degree, one count of assault of a child in the third degree, one count of criminal mistreatment in the fourth degree, and another count of assault of a child in the second degree.  All of the counts alleged domestic violence.  The first three also alleged aggravating factors.  Miller contends she is under unlawful restraint because the State suppressed favorable evidence in violation of *Brady*[1] resulting in prejudice to her.  We disagree and deny the petition.[2]

## FACTS

Miller is S.L-K.'s grandmother.  When S.L-K. was nine years old, her school filed a child neglect complaint with Child Protective Services (CPS).  S.L-K. was taken to the Sexual Assault Clinic and Child Maltreatment Center where an examination showed bruising on S.L-K.'s entire

---

[1] *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

[2] On March 3, 2016, Miller filed a notice of appeal.  This court stayed her direct appeal pending our decision on her PRP.  No opening briefs have been filed on Miller's direct appeal.

body.  X-rays showed healing fractures to both of S.L-K.'s wrists, her left arm, one of her fingers, and one of her toes.

Thurston County Sheriff's Office Detective Jamie Gallagher started an investigation.  She questioned several of Miller's other grandchildren, who also lived with Miller, about S.L-K.  They told Gallagher that S.L-K. was treated differently than them because S.L-K. "had a demon" inside here.  Br. of Resp't Appx. F at 2.  They witnessed Miller whip S.L-K. with a belt.

When interviewed, S.L-K. was reluctant to talk about Miller.  She did, however, report that Miller tried to drown her in a bathtub by holding her under water.

On December 24, 2013, the State charged Miller with assault of a child in the second degree—domestic violence.

On July 20, 2015, the prosecutor e-mailed Miller's attorney CPS's investigation notes.  The notes in our record are redacted, but according to the prosecutor, the notes state that S.L-K. told a social worker that she was "molested by a cousin named Kenneth."  Br. of Resp't Appx. H at 5. (*See also* Br. of Resp't at Appx. G)  The notes given to defense counsel also state that "[a]llegations of sexual abuse by 'Kenneth Unknown' were reported to law enforcement on 04/24/2014."  Br. of Resp't Appx. H at 5.

In January 2016, the State amended its information to charge Miller with all of the counts previously listed.  According to the prosecutor, there was no investigation of a possible sexual assault by someone named "Kenneth Unknown" before or during Miller's bench trial.  Br. of Resp't App. G at 3.

During the January 2016 bench trial, the prosecutor asked S.L-K. if anyone else had hurt her other than Miller.  S.L-K. testified there was a person named "Dean" who would "roll [her] in the carpet and slam[ ] [her] on the floor."  Br. of Resp't Appx. L at 75.  The prosecutor then asked

2

S.L-K. if there was anyone else who hurt her. S.L-K. responded, "I don't remember, no." Br. of Resp't Appx. L at 75. On January 22, the trial court found Miller guilty as charged.

On February 24, 2016, S.L-K.'s grandfather informed the prosecutor that S.L-K. disclosed that she had been sexually abused by a person named Kenneth. The prosecutor then disclosed this information to Gallagher. Because the alleged abuse occurred in a different jurisdiction, the information was forwarded to the appropriate police department.

On March 2, the sentencing court sentenced Miller.

On March 3, Lacey Police Department officers met with S.L-K.'s grandfather, who reported that S.L-K. confided to him that Miller's nephew, Kenneth Spears, had sexually abused her. S.L-K. also reported the abuse to a sexual assault examiner and told the examiner that she told Miller about Spears's sexual abuse, but Miller "beat her for telling" and Miller's adult son placed S.L-K.'s hand over a hot burner and threatened to cut off her fingers if she told. Br. of Resp't at Appx. G. On June 17, the prosecutor sent an e-mail to Miller's attorney regarding these allegations.

Miller filed a personal restraint petition (PRP) challenging her convictions.

ANALYSIS

Miller contends the State violated her right to due process under *Brady* by failing to provide the defense with material exculpatory evidence pertaining to Spears's alleged sexual assault of S.L-K. We disagree.

I.     STANDARD OF REVIEW

When considering a PRP, a court may grant relief to a petitioner only if the petitioner is under an unlawful restraint, as defined by RAP 16.4(c). *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 16, 296 P.3d 872 (2013). The collateral relief afforded under a PRP is limited, and requires the

petitioner to show that he was prejudiced by the alleged error of the trial court. *In re Pers. Restraint of Hagler*, 97 Wn.2d 818, 819, 650 P.2d 1103 (1982). There is no presumption of prejudice on collateral review. *Hagler*, 97 Wn.2d at 823. The petitioner must either make a prima facie showing of a constitutional error that, more likely than not, constitutes actual and substantial prejudice, or a nonconstitutional error that inherently constitutes a complete miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 810, 812, 814, 792 P.2d 506 (1990). Without either such showing, we must dismiss the petition. *Cook*, 114 Wn.2d at 810, 812. However, with respect to claims of *Brady* violations, the prejudice element of a petition is established by showing "a reasonable probability that the outcome of the proceedings would have been different" absent the *Brady* violation. *In re Pers. Restraint of Crace*, 174 Wn.2d 835, 845, 280 P.3d 1102 (2012).

The petitioner's allegations of prejudice must present specific evidentiary support. *In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). Such support may come from the trial court record. "If the petitioner's allegations are based on matters outside the existing record, the petitioner must demonstrate that he has competent, admissible evidence to establish the facts that entitle him to relief," which may include affidavits or other corroborative evidence. *Rice*, 118 Wn.2d at 886. Bald assertions and conclusory allegations are insufficient support. *Rice*, 118 Wn.2d at 886. If a petitioner makes a prima facie showing of prejudice, but the merits of his assertions cannot be determined on the record, we will remand for a hearing pursuant to RAP 16.11(a) and RAP 16.12. *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983).

II.    *BRADY* VIOLATION

Miller asserts that, under *Brady*, the State violated its duty to disclose evidence favorable to the accused by suppressing exculpatory evidence that would have changed the outcome of Miller's trial.  We disagree.

To establish a *Brady* violation, the petitioner must establish three elements: "(1) '[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching,' (2) 'that evidence must have been suppressed by the State, either willfully or inadvertently,' and (3) the evidence must be material."  *State v. Davila*, 184 Wn.2d 55, 69, 357 P.3d 636 (2015) (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999)).  If a defendant fails to demonstrate any of the three elements, his *Brady* claim fails.  *State v. Sublett*, 156 Wn. App. 160, 199-201, 231 P.3d 231 (2010), *aff'd*, 176 Wn.2d 58 (2012).

A.    Favorable Evidence

Favorable evidence under *Brady* includes impeachment evidence as well as exculpatory evidence.  *Davila*, 184 Wn.2d at 70.  Miller alleges the evidence was exculpatory.  Exculpatory evidence "tend[s] to establish a criminal defendant's innocence."  Black's Law Dictionary 577 (7th ed. 1999).

Here, Miller was charged with, and convicted of, two counts of assault of a child in the first degree—domestic violence with aggravating factors, one count of assault of a child in the second degree—domestic violence with aggravating factors, one count of assault of a child in the third degree—domestic violence with aggravating factors, one count of criminal mistreatment in the fourth degree—domestic violence, and one count of assault of a child in the second degree—domestic violence.  These crimes are supported by medical records and statements from S.L-K.

and Miller's other grandchildren. Evidence that S.L-K. was sexually abused by another individual would not be material to Miller's guilt of the assault and criminal mistreatments offenses.

    B.      Suppression

Moreover, there was no suppression. Suppression occurs when the government withholds material evidence favorable to the accused, "irrespective of the good faith or bad faith of the prosecution." *In re Pers. Restraint of Stenson*, 174 Wn.2d 474, 486, 276 P.3d 286 (2012).

Here, six months before trial, the prosecutor e-mailed Miller's attorney CPS's investigation notes. The notes state that S.L-K. told a social worker that she was "molested by a cousin named Kenneth." Br. of Resp't at App. H at 5. The notes given to defense counsel also state that "[a]llegations of sexual abuse by 'Kenneth Unknown' were reported to law enforcement on 04/24/2014." Br. of Resp't at App. H at 5. "The minimal guarantees of due process do not require the prosecution to conduct an independent investigation in the hopes of bolstering potentially exculpatory defense theories." *State v. Mullen*, 171 Wn.2d 881, 902, 259 P.3d 158 (2011). Since the government did not withhold evidence, there was no suppression in violation of *Brady*.

Miller also appears to argue in her reply brief that the State violated *Brady* by not disclosing information about Spears after trial. In general, "*Brady* governs *the State's* disclosure obligations and does not provide the proper analytical framework to analyze any-and-all evidence discovered after trial." *Mullen*, 171 Wn.2d at 902. Regardless, our record shows the prosecutor promptly contacted the authorities and defense counsel after learning of the molestation allegations against Spears.

C.     Prejudice

Lastly, Miller does not show the results of her trial would have been any different. Prejudice is shown when the admission of the suppressed evidence would have created a reasonable probability of a different result. *In re Pers. Restraint of Woods*, 154 Wn.2d 400, 428, 114 P.3d 607 (2005).  Reasonable probability is defined as "'a probability sufficient to undermine confidence in the outcome.'" *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) (quoting *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. ED. 2d 674 (1984)).  Favorable evidence must be disclosed to the accused "'where the evidence is material either to guilt or to punishment.'" *Stenson*, 174 Wn.2d at 486 (quoting *Brady*, 373 U.S. at 87).  "'The mere *possibility* that an item of undisclosed evidence *might* have helped the defense or *might* have affected the outcome of the trial . . . does not establish 'materiality' in the constitutional sense.'" *In re Pers. Restraint of Lui*, 188 Wn.2d 525, 566, 397 P.3d 90 (2017) (quoting *State v. Kwan Fai Mak*, 105 Wn.2d 692, 704-05, 718 P.2d 407 (1986)).

Based on the weight of the State's evidence, including medically documented bruising and fractures, and statements by S.L-K. and Miller's other grandchildren, the evidence of possible molestation by another individual would not likely change the results of the proceeding.

Miller fails to show a *Brady* violation.  Because there is no showing of a constitutional error that, more likely than not, constitutes actual and substantial prejudice, or a nonconstitutional error that inherently constitutes a complete miscarriage of justice, we deny her PRP.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Worswick, J.

_____
Bjorgen, C.J.