# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 61187-2-II |
| MARVIN LOFI LEO, | |
| Petitioner. | UNPUBLISHED OPINION |

CRUSER, C.J.—Marvin Lofi Leo was originally sentenced to life without the possibility of parole plus 1,100 months for the crimes of aggravated murder in the first degree and assault in the first degree that he committed when he was 17 years old. At a resentencing hearing, the trial court resentenced Leo on his aggravated murder convictions, but not his assault convictions. As a result, Leo is currently sentenced to 66 years in prison. Leo argues that this sentence is an unconstitutional de facto life sentence and that he is entitled to have the mitigating factors of his youth considered for his entire sentence. Leo contends that he suffered actual prejudice as a result of the trial court's refusal to revisit the overall sentence and asks that this court remand his case to the trial court for a full resentencing, at which the court may consider how Leo's youth affects his sentence as a whole. The State argues that Leo's sentence is not a de facto life sentence, as RCW 9.94A.730 affords Leo the opportunity for release after serving at least 20 years for his assault convictions, and that resentencing is not required.

We hold that Leo has demonstrated entitlement to relief. Leo is entitled, under our supreme court's holdings in *State v. Gilbert*[1] and *State v. Carter*,[2] to have the superior court consider his entire sentence, not merely his sentences for aggravated murder. We further hold that RCW 9.94A.730 does not provide an adequate remedy in Leo's case. Accordingly, we vacate Leo's sentence and remand for resentencing. On remand, the superior court, having already determined that Leo's crime was mitigated by his youthful characteristics, must consider how the mitigating factors of Leo's youth affected his sentence as a whole, and must have the discretion to adjust Leo's sentence accordingly.

FACTS

I. BACKGROUND AND LEO'S RESENTENCING

In 1998, 17-year-old Marvin Leo participated in a gang-related shooting, after which he was charged with, and pleaded guilty to, five counts of aggravated first degree murder and five counts of first degree assault, all with firearm enhancements. In 2000, the trial court sentenced Leo to 5 terms of life without the possibility of parole (LWOP) for the aggravated murder counts, 5 terms of 100 months for the assault charges, and 10 firearm enhancements that each carried a term of 60 months. Leo's assault terms and their associated firearm enhancements were ordered to run consecutive to each other and to Leo's life sentence on the aggravated murders. In total, Leo was sentenced to LWOP plus 1,100 months in prison.

---

[1] 193 Wn.2d 169, 438 P.3d 133 (2019).

[2] 3 Wn.3d 198, 548 P.3d 935 (2024).

Leo was resentenced in 2016, pursuant to the United States Supreme Court's opinion in *Miller v. Alabama*[3] and Washington's *Miller*-fix statutes (RCW 10.95.030 and .035). At his resentencing hearing, Leo presented the expert testimony of Dr. Nathan Henry, a forensic psychologist who evaluated Leo for his experiences in his youth and his risk of future violence. Dr. Henry testified that Leo experienced a tumultuous childhood. Leo's parents were violent with each other, Leo's father was an alcoholic, and Leo's family moved from Hawaiʻi to Tacoma when Leo was in his early adolescence. Leo did not receive much support or guidance at home after experiencing the culture shock of moving to Tacoma, as his parents separated shortly after the move and his mother worked long hours. Leo started to become associated with a local gang at about that time. According to Dr. Henry, a dysfunctional family life can lead a young person to join a gang because they seek connection and support.

Dr. Henry also opined on Leo's personality, demeanor, his rehabilitation efforts in prison, and what bearing this context has on Leo's likelihood of future violence. Dr. Henry found Leo to be even-tempered, confident, and self-assured; he has not had a violent incident since 2001. Leo has completed self-improvement courses while incarcerated, including a restorative therapy group, an anger management course, a substance abuse course, and a cognitive behavioral life skills class. All variables considered, Dr. Henry stated that Leo presents a low to moderate risk of future violence and that Leo's youth and difficult upbringing impacted his judgment when he participated in the shooting.

At Leo's resentencing hearing, the parties disputed the scope of the resentencing court's authority to adjust Leo's sentence. The State contended that under RCW 10.35.030, the trial court

---

[3] 567 U.S. 460, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

could not run Leo's aggravated murder sentences concurrently. The State requested that the trial court resentence Leo to 5 counts of 25 years to life each, to be served consecutively. Leo argued that the trial court had authority to resentence him under either the sentencing reform act of 1981 (SRA), ch. 9.94A. RCW, as an exceptional downward sentence, because Leo's existing sentence constitutes excessive punishment, or under RCW 10.95.030. Leo asserted that imposing a new consecutive sentence for each murder charge would violate RCW 10.95.030 as a de facto life sentence. He requested a minimum sentence of 30 years to life, to be served concurrently. Leo argued in his sentencing memorandum that the trial court should resentence him to 152 months for each assault conviction, to be served concurrently with each other as well as with his aggravated murder convictions, but neither party addressed Leo's assault sentences during the resentencing hearing. At the hearing, Leo expressed regret for his participation in the shooting and stated that he has endeavored to improve himself and to be a positive influence for the younger men within his correctional facility.

The trial court resentenced Leo on each of his aggravated murder convictions and firearm enhancements to 40 years to life, to be served concurrently to each other and to the assault convictions. The assault convictions, however, were not revisited on resentencing and the court stated in the addendum to Leo's judgment and sentence (J&S) that "[a]ll other terms and conditions that are not modified by this addendum and which are set forth in the June 28, 2002, Judgment and Sentence remain in full force and effect." Clerk's Papers (CP) at 440. As a result, the assault sentences remained *consecutive to each other*, as well as consecutive to the firearm enhancements attached to the assaults (which also run consecutively to each other as well as to the underlying sentence).

The trial court indicated that it believed it had the discretion to issue the new sentence under the SRA and *Miller*. The trial court did not expressly address the firearm enhancements for the aggravated murder counts in the addendum, although it did address them in the findings of fact and conclusions of law in support of the exceptional sentence, stating "[T]he Court finds that sentences of a minimum 40 years to life with review by the ISRB on counts 1 through 5 and all sentences on all counts and all firearm enhancements on all counts are to run concurrent." *Id.* at 448. The court also stated in the addendum that the "*term[s] of confinement*" in counts one through five were "40 (Forty) years to life." *Id.* at 439 (emphasis added) (capitalization omitted). The court stated that "[it] rather figured" that it was only tasked with amending the minimum term for Leo's aggravated murder convictions, as neither party asserted at the hearing that the trial court should amend Leo's J&S beyond his aggravated murder convictions. The trial court stated that it believed that Leo "should have a chance to get out at some point in his life." Verbatim Rep. of Proc. (VRP) (Dec. 5, 2016) at 39. In the trial court's findings of fact, it stated that "biology and social pressures played a role in [Leo's] behavior when he was 17 years old," and mentioned Leo's low risk of future violence. CP at 444. In the conclusions of law, the trial court stated that "it has been shown by a preponderance of the evidence, . . . that to a significant degree, the defendant's youth was a significant factor in the offense and [ ] his maturation since that time supports a sentence below the standard range." *Id.* at 447.

Leo's updated sentence on his aggravated murder convictions is outlined in his J&S addendum, but Leo's original J&S is still in effect with respect to his assault convictions and their firearm enhancements.[4]

## II. POST-RESENTENCING HISTORY

In 2018, Leo contacted the Indeterminate Sentence Review Board (ISRB) to inquire about his earned release date (ERD), and the ISRB replied that it would verify Leo's ERD and follow up. Leo believed that he would be eligible for release after serving 20 years of his assault convictions and 40 years of his aggravated murder convictions, but his ERD was set at 2058. An email between members of the ISRB indicates that Leo's ERD is March 8, 2059. It states that Leo is eligible for release on his aggravated murder convictions in 2038, but that he must remain incarcerated for 20 more years on his assault convictions and their firearm enhancements. Leo also reached out to DOC, which also concluded that Leo's ERD is March 8, 2059 because his assault convictions and firearm enhancements run consecutively.

In 2022, the ISRB asked the trial court to clarify the date of Leo's original J&S, how his firearm enhancements should run, and for a correction to the J&S addendum to indicate that Leo would be eligible for parole. The trial court replied with a copy of the findings of fact and conclusions of law, and the ISRB further requested that the trial court issue an order correcting the errors in Leo's J&S. There is no indication in our record that the trial court took any further action.

Leo directly appealed his resentencing and asserted that his new sentence of 40 years to life was an unconstitutional de facto life sentence. *State v. Leo*, No. 85902-1-I, slip op. at 2-3

---

[4] The J&S addendum mistakenly listed his maximum term for his aggravated murder convictions as "life [without] parole," and also listed the wrong date for Leo's original J&S. CP at 439 (capitalization omitted).

(Wash. Ct. App. Feb. 5, 2024) (unpublished) https://www.courts.wa.gov/opinions/pdf/859021.pdf.

He did not challenge or address his assault sentences on appeal. Division One of this court upheld

Leo's sentence and concluded that 40 years did not constitute a de facto life sentence because Leo

could still have a meaningful life outside of prison. *Id.* at 1.

Following his appeal, Leo petitioned the ISRB for an early release hearing pursuant to

RCW 9.94A.730. The ISRB denied Leo's petition in January 2025 and stated that he must serve

the sentence for his aggravated murder counts and successfully petition the ISRB for release on

those counts (which cannot happen until 2038) before he may petition the ISRB for release on his

assault counts. Leo then filed the instant petition.

ANALYSIS

To be entitled to relief, a petitioner asserting constitutional error must prove the existence

of any alleged error by a preponderance of the evidence, and that, more likely than not, actual and

substantial prejudice resulted from the alleged error. *In re Pers. Restraint of Cook*, 114 Wn.2d 802,

814, 792 P.2d 506 (1990); *In re Pers. Restraint of Schoenhals*, 5 Wn.3d 375, 393, 576 P.3d 554

(2025). The petitioner must also establish that no adequate remedy exists other than the requested

relief. RAP 16.4(d).

Leo asserts that the trial court erred in amending his J&S both because his 66-year sentence

is an unconstitutional de facto life sentence and because he was entitled to consideration of how

his youthfulness may have impacted all of his convictions, not just the aggravated murder

convictions. Leo argues that he experienced actual and substantial prejudice because the trial court

would have given him a lower sentence if it knew that it had discretion to further lower his

sentence. The State, however, contends that Leo's sentence is not erroneous, and if any error exists, RCW 9.94A.730 offers an adequate remedy.

For the reasons explained below, we hold that Leo has demonstrated error, and suffered actual, substantial prejudice as a result of that error. Because no other remedy is adequate, we grant Leo's requested relief and remand to the trial court for resentencing, where the trial court must consider how Leo's youth impacted all of his convictions.

## I. CONSIDERATION OF LEO'S SENTENCE AS A WHOLE

*A. Legal Principles*

In *Gilbert*, Gilbert was resentenced pursuant to Washington's *Miller*-fix statutes because he had been sentenced to LWOP for aggravated first degree murder (among other charges) committed when he was 15 years old. 193 Wn.2d at 171-72. At Gilbert's resentencing, the trial court believed it only had the authority to amend the length of Gilbert's aggravated murder sentence. *Id.* at 172. The supreme court held that when resentencing an offender for an aggravated murder committed as a juvenile, the trial court must consider the offender's youth as a mitigating factor for any additional counts and, under its discretion, may decrease the length of the sentence. *Id.* at 176. Further, the court held that the trial court's discretion to impose a downward exceptional sentence based on the offender's youth may not be limited by statute. *Id.* at 175-76 (citing *State v. Houston-Sconiers*, 188 Wn.2d 1, 21, 391 P.3d 409 (2017)). The supreme court remanded for resentencing so that Gilbert may have his entire sentence reconsidered. *Id.* at 177.

In *Carter*, Carter was resentenced pursuant to *Monschke*[5] because he had been sentenced to mandatory LWOP for an aggravated murder committed when he was 18 years old. 3 Wn.3d at 204-08. Carter had also been convicted of four counts of first degree assault with firearm enhancements and unlawful possession of a firearm. *Id.* at 204. The trial court resentenced Carter on all counts because the court believed that it "had discretion to consider mitigating circumstances associated with the defendant's youth as to all convictions" under *Houston-Sconiers*. *Id.* at 208. The State argued on appeal that the trial court was not authorized to resentence Carter on the non-murder convictions, but the supreme court ultimately disagreed. *Id.* at 210, 227. Citing *Gilbert*, the supreme court concluded that resentencing defendants only on their murder convictions would constitute error because "it would prevent the court from exercising its discretion and considering the mitigating factors of youth." 3 Wn.3d at 225-26. The supreme court held that the trial court "properly exercised its discretion to resentence Carter on all counts" because trial courts *must* consider an offender's qualities of youth for all counts when resentencing under *Miller*, and may impose a mitigated sentence on remand. 3 Wn.3d at 227.

In addition to showing that Leo's sentence is erroneous, Leo must also prove by a preponderance of the evidence that the alleged error has actually and substantially prejudiced him. *In re Pers. Restraint of Meippen*¸ 193 Wn.2d 310, 315, 440 P.3d 978 (2019). This burden requires that the petitioner show that in the absence of the alleged error, "the outcome would more likely than not have been different." *Id.* at 316.

---

[5] The supreme court held in *In re Personal Restraint of Monschke*, that defendants ages 18-20 years old are automatically entitled to resentencing if they were convicted of aggravated first degree murder and sentenced to mandatory LWOP. 197 Wn.2d 305, 329, 482 P.3d 276 (2021) (plurality opinion).

*B. Application*

Based on the supreme court's holdings in *Gilbert* and *Carter*, Leo is entitled to be resentenced for his assault convictions. At Leo's resentencing, the trial court adjusted his sentence for his aggravated murder convictions, but left his assault convictions—and their firearm enhancements—untouched. The result is that Leo, who was age 17 at the time of his crimes and whose other current offenses have already been determined to have been impacted by his youth, is sentenced to a term of 66.6 years in prison. This result is both nonsensical and deprives Leo of the trial court's consideration of his youth for his sentence as a whole, as is required by *Gilbert* and *Carter*. Therefore, we remand for resentencing. On remand, the trial court must review Leo's *entire* sentence, including his assault convictions and his firearm enhancements, and have the discretion to adjust his sentence accordingly.

The State argues that the supreme court's opinion in *Gilbert* does not entitle Leo to another resentencing because the trial court understood its power to "impose a mitigated exceptional sentence based on Leo's youth at the time of the crimes" and did so in two ways: by ordering that Leo's first degree murder convictions run concurrently to his assault convictions and by clarifying that "the 40 years to life on each count of aggravated first degree murder included the firearm enhancement." Br. of Resp't at 14. However, this argument only addresses the murder convictions, not the assault convictions. In deciding to run the first degree murder convictions concurrently with the assault convictions, the trial court did not consider whether Leo's assault convictions, and their associated firearm enhancements, should be adjusted due to his youth, something *Gilbert* and *Carter* require the sentencing court to do. *Carter*, 3 Wn.3d at 225-26 (citing *Gilbert*, 193 Wn.2d at 176). The State's argument fails to address Leo's essential claim, which is that the trial court

did not consider how Leo's youth at the time he committed the crime should impact the length of his sentence for his assault convictions.[6]

Leo must also prove that this error has caused him actual and substantial prejudice. Leo asserts that he was actually prejudiced by the trial court's failure to consider all of his convictions during resentencing because the trial court would probably not have given Leo a 66-year sentence if it knew that it had the discretion to adjust his assault convictions as well. The State, however, contends that "Leo's sentencing court understood that it had the power to impose a mitigated

---

[6] The State also argued that the resentencing court did, in fact, order that each of Leo's assault convictions and associated firearm enhancements were to be run concurrently to *each other* as well as to the sentences and enhancements on the murders. The State relies on the ninth conclusion of law in the resentencing court's findings of fact and conclusions of law, which states: "the Court finds that sentences of a minimum 40 years to life with review by the ISRB on counts 1 through 5 and all sentences on all counts and all firearm enhancements on all counts are to run concurrent better serves and vindicates the policies and purposes of controlling case law." CP at 448. However, paragraph 3.2 of the addendum to the judgment and sentence expressly states, "The minimum terms of confinement set above . . . shall be served concurrently [ ] to each other, and shall be served concurrently [ ] to the sentences imposed for Counts Six through Ten . . . *All other terms and conditions* that are not modified by this addendum and which are set forth in the [original] Judgment and Sentence *remain in full force and effect*." *Id.* at 440 (emphasis added). The State cites no authority holding that language included in a sentencing court's conclusions of law, which are NOT incorporated into the defendant's judgment and sentence, supersedes the express language contained in the judgment and sentence. The purpose of the findings of fact and conclusions of law is to explain the reasons for the court's decision in the judgment and sentence— it does not follow that a document with such a purpose would supplant the court's direction in the judgment and sentence. RCW 9.94A.535 ("Whenever a sentence outside the standard sentence range is imposed, the court shall set forth the reasons for its decision in written findings of fact and conclusions of law.").

Moreover, the language the State cites is ambiguous at best. The context in which these conclusions of law were entered was the *Miller* resentencing hearing in which the court expressly considered *only* Leo's murder sentences and enhancements. When considering that context, as well as the express language in paragraph 3.2 of the addendum to the J&S, the language "on all counts" on which the State relies was just as likely referring only to all of the *murder* counts, which were counts one through five. In any event, the express language from the addendum is the controlling language and we disagree with the State's proposed interpretation of Leo's current sentence.

exceptional sentence based on Leo's youth at the time of the crimes. . . . And it did." Br. of Resp't at 14.

We conclude that Leo has proven actual and substantial prejudice because the trial court made comments suggesting that if it knew it could have adjusted Leo's sentences on his assaults and associated firearm enhancements, it would have done so. When ruling on Leo's new sentence, the trial court stated that Leo "should have a chance to get out at some point in his life." VRP (Dec. 5, 2016) at 39. The trial court also indicated in its conclusions of law that, "to a significant degree, the defendant's youth was a significant factor in the offense and . . . his maturation since that time supports a sentence below the standard range." CP at 447. The superior court resentenced Leo prior to the release of the *Gilbert* and *Carter* opinions, so the trial court was presumably unaware that it possessed the discretion to adjust Leo's sentence for the assault convictions. If the trial court knew that it had the discretion to resentence Leo on all of his convictions, and wanted him to "get out at some point in his life," it likely would have imposed a sentence less than 66 years. VRP (Dec. 5, 2016) at 39.

As support for his contention that the trial court may have given Leo a different sentence if it had knowledge of its discretion, Leo points to his codefendant John Phet's resentencing. The original sentencing court sentenced Phet, who was 16 at the time of the shooting,[7] to the exact same sentence as Leo for the same crimes. *State v. Phet*¸ No. 48877-9-II, slip op. at 1 (Wash. Ct. App. Jan. 22, 2020) (unpublished) https://www.courts.wa.gov/opinions/pdf/D2%2048877-9-II%20Unpublished%20Opinion.pdf. At Phet's *Miller* resentencing, the trial court did not believe that it could adjust Phet's sentence for his assault convictions or that it could run Phet's assault

---

[7] Phet was seven months younger than Leo.

and aggravated murder sentences concurrently. *Id.* at 2. The trial court sentenced Phet to 25 years to life on all 5 murder convictions, to be served consecutively. *Id.* Phet appealed his sentence, and Division Two held that the trial court had the discretion to amend Phet's entire sentence, and that it may run his sentences concurrently. *Id.* at 3.

On remand, the trial court adjusted Phet's sentence to 25 years to life for all of his aggravated murder convictions, 123 months for each count of assault, and all firearm enhancements and counts ran concurrently. Phet's resentencing offers informative context not because Leo is necessarily entitled to receive the same sentence as Phet, but because it shows that a court may impose a drastically different sentence on a juvenile offender when it knows that it has the discretion to adjust the offender's entire sentence. We hold that Leo suffered actual and substantial prejudice due to his sentencing error because the trial court was unaware of its discretion to adjust Leo's entire sentence and because it is more likely than not that resentencing would result in a shorter sentence than 66 years.

## II. THE ADEQUACY OF ALTERNATE REMEDIES

This panel may only grant relief to the petitioner if "other remedies which may be available to petitioner are inadequate under the circumstances." RAP 16.4(d).

The State argues that RCW 9.94A.730 offers Leo a sufficient remedy by converting his assault convictions with firearm enhancements to an indeterminate sentence between 240 and 1100 months. As discussed in section I, RCW 9.94A.730(1) allows "any person convicted of one or more crimes committed prior to the person's 18th birthday [to] petition the [ISRB] for early release after serving no less than 20 years of total confinement." The State contends in its brief that "Leo . . . seeks a resentencing hearing on the assault convictions consistent with *Houston-*

*Sconiers*," and that in such a scenario, resentencing is not necessary because RCW 9.94.730 offers an adequate remedy. Br. of Resp't at 15. The State cites *In re Personal Restraint of Hinton*, 1 Wn.3d 317, 525 P.3d 156 (2023), in support of this contention.

Hinton was sentenced to 444 months of confinement for second degree murder and second degree attempted murder, each with a firearm enhancement, committed when he was 17 years old. *Id.* at 321-22. Hinton argued that he was entitled to resentencing based on *Houston-Sconiers*'s holding that a trial court has discretion to impose a sentence below the standard range for a juvenile defendant after considering the mitigating factors of the defendant's youth. *Id.* at 333-34; *Houston-Sconiers*, 188 Wn.2d at 21. The supreme court disagreed, holding that RCW 9.94A.730 offered an adequate remedy to the length of Hinton's sentence because the statute converted Hinton's standard range adult sentence to an indeterminate sentence with a minimum of 20 years. 1 Wn.3d at 335.

The alternative that the State identifies from *Hinton* would not adequately remedy the harm that Leo has experienced, as Leo argues error beyond the holding in *Houston-Sconiers*. In *Hinton*, the court held that the "substantive constitutional rule" of *Houston-Sconiers* was remedied by RCW 9.94.730 because it adjusted Hinton's 37-year sentence to an indeterminate sentence with a minimum term of 20 years and a top term equal to the original sentence. 1 Wn.3d 331. In Leo's case, however, the error arises because of the interplay between his aggravated murder sentences and his assault sentences and the fact that under the holdings in *Gilbert* and *Carter*, the sentencing court must consider how an offender's youth affected *all* of his crimes. That consideration is absent in Leo's case.

Additionally, *Hinton* is factually inapposite to Leo's case. First, Hinton was convicted of second degree murder and second degree attempted murder, not first degree aggravated murder. *Id.* at 322. The *Hinton* court specifically noted that RCW 9.94A.730 "does not apply to juvenile offenders serving the mandatory life without parole sentences at issue in *Miller*." *Id.* at 332. Hinton's case, notably, did not involve a *Miller* resentencing. Applying the remedy in *Hinton* would undercut the supreme court's holding in *Gilbert* that a resentencing court cannot be restricted from resentencing a *Miller* defendant on their non-aggravated murder convictions. 193 Wn.2d at 176. Second, Hinton's sentence of 37 years was significantly shorter than sentences previously considered to be de facto life sentences.[8] Finally, the supreme court noted in *Hinton* that RCW 9.94A.730 has no relevance to an offender whose sentence is shorter than 20 years. 1 Wn.3d at 334 n.7. After considering Leo's sentence as a whole, the trial court could potentially shorten Leo's sentence for his assault convictions below 20 years, rendering RCW 9.94A.730 irrelevant.[9]

In sum, the remedy identified in *Hinton* and RCW 9.94A.730 is not an adequate alternative remedy in this case.[10]

---

[8] *See, e.g.*, *State v. Haag*, 198 Wn.2d 309, 313, 495 P.3d 241 (2021), in which Haag's sentence of 46 years was held to be a de facto life sentence.

[9] If, for example, the trial court were to run all of Leo's assault sentences and their associated firearm enhancements concurrently *to each other* as well as the Leo's murder sentences and enhancements, Leo would have no additional time to serve on his assault convictions and the confusion about his earliest possible release date on his assaults would be assuaged.

[10] Leo also argues that his 66-year sentence is a de facto life sentence under *Haag*. The State does not dispute this assertion. However, we need not explore this claim of error further because our resolution of this case rests on our supreme court's holdings in *Gilbert* and *Carter*, and the inadequacy of RCW 9.94A.730 to remedy the error in this case.

STATE'S MOTION TO REDESIGNATE

The State asserts that DOC and/or the ISRB are the correct respondents to Leo's petition, as Leo discussed the ERD reported by DOC and the ISRB's denial of his petition for early release in his brief. We deny the State's motion and hold that the State is the correct respondent to Leo's petition because Leo challenges his sentence, not the ISRB's preliminary determination about his potential early release date. *Compare In re Pers. Restraint of Dodge*, 198 Wn.2d 826, 829, 502 P.3d 349 (2022) (The ISRB responded where a petitioner challenged "the ISRB's application of RCW 9.94A.730 in an early release decision"), *with In re Pers. Restraint of Schoenhals*, 5 Wn.3d 375, 381, 576 P.3d 554 (2025) (plurality opinion) (The State responded where petitioner argued that he was entitled to resentencing as *Monschke* is a "significant change in the law" exemption to the usual one-year time bar for a PRP).

CONCLUSION

At Leo's *Miller* resentencing, the trial court did not reconsider Leo's sentence as a whole as required under *Gilbert* and *Carter*, and Leo has demonstrated actual and substantial prejudice as a result of the trial court's failure to consider the impact of Leo's youth on his entire sentence. We vacate Leo's sentence and remand this matter to the trial court with instructions to consider Leo's entire sentence in light of the mitigating impact of his youth that has already been found relevant to his sentence by the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

No. 61187-2-II

CRUSER, C.J.

We concur:

MAXA, J.

GLASGOW, J.